PEOPLE v PITTS

Docket No. 31154. Submitted November 8, 1977, at Detroit.—Decided July 17, 1978.

Gregory Pitts was convicted in Recorder's Court of Detroit of reckless discharge of a firearm resulting in death under the aiding and abetting statute, Patricia J. Boyle, J. Defendant appeals contending that his conviction was improper because there was no proof at trial that he shared the requisite criminal intent with the party who did the shooting and that a party may not be convicted of aiding and abetting a crime which consists merely of a negligent act. *Held:*

A conviction of aiding and abetting in the reckless discharge of a firearm resulting in the death was not improper where evidence was introduced at trial that the defendant, with an apparently violent purpose, planned entry into the house where the killing took place and participated in creating a situation in which there was a substantial likelihood that the gun in the possession of his accomplice would be handled in a reckless or careless manner.

Affirmed.

1. CRIMINAL LAW—AIDING AND ABETTING—NEGLIGENCE—CONSCIOUS SHARING—FORESEEABLE RESULTS.

The aiding and abetting statute makes a defendant a principal when he shares in any criminal act; knowledge of the principal's criminal purpose and a conscious sharing of the act are required for the offense, but it is sufficient if defendant performs acts that aid in the creation of the circumstances or participates in an enterprise the scope being such that the principal criminal act is a reasonably foreseeable result (MCL 767.39; MSA 28.979).

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 120.
[2] 40 Am Jur 2d, Homicide § 91.
  Who other than actor is liable for manslaughter. 95 ALR2d 175.
[3] 40 Am Jur 2d, Homicide §§ 29, 37.

2. HOMICIDE—NEGLIGENT HOMICIDE—PARTIES—SCOPE OF ENTERPRISE.
  Negligent homicide is not a crime necessarily limited in commission to one person; the scope of the enterprise is a fact question in each individual case.

3. HOMICIDE—AIDING AND ABETTING—RECKLESS DISCHARGE OF FIREARM—PARTICIPATION.
  A conviction of aiding and abetting in the reckless discharge of a firearm resulting in death was not improper where evidence was introduced at trial that the defendant, with an apparently violent purpose, planned entry into the house where the killing took place and participated in creating a situation raising a substantial likelihood that the gun in the possession of his accomplice would be handled in a reckless or careless manner which he could reasonably have anticipated would have caused death.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Principal Attorney, Appeals, and *Anne B. Wetherholt,* Assistant Prosecuting Attorney, for the people.

*Carol A. Park,* for defendant on appeal.

Before: D. C. RILEY, P. J., and D. F. WALSH and A. C. MILLER,* JJ.

A. C. MILLER, J. This appeal presents the novel issue as to whether it is possible to aid and abet an act which lacks willful intent.

Defendant Gregory Pitts was convicted of reckless discharge of a firearm resulting in death (MCL 752.861; MSA 28.436(21)). He was tried jointly with his brother on the charge of first-degree murder, but the jury returned verdicts of guilty as to both of them on the above offense. Defendant was sentenced to a term of 16 to 24 months in jail.

Both defendants had engaged in a running feud with neighbors named Burton in the same apart-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ment house and were again involved in one of their alcoholic brawls, this time defendant wielding a bar stool and his brother a shotgun, when the gun discharged killing Mrs. Burton.

The evidence would have justified a more serious verdict, but the extent of the feuding, amount of alcohol and description of the personality of deceased must have played a part in the jury deliberations.

The defendant argues that guilt as an aider and abettor requires that the accused share the requisite criminal intent with the principal. Further, defendant contends that the offense of reckless discharge of a firearm is characterized by simple negligence, neither wanton nor willful. Since no intent is necessary for the substantive offense, there is no intent that can be shared by the aider and abettor. Finally, defendant concludes as a matter of law, a person cannot aid and abet a negligent act.

Conversely, the prosecution argues that the guilt of an aider and abettor depends on his own mental state, not that of the principal. It is their contention that an aider is liable for any act committed in the scope of the common enterprise. Therefore, it follows that in the present case the instruction on aiding and abetting in the reckless discharge of a firearm was proper inasmuch as defendant and Palmer acted in concert to attack and intimidate the Burtons. Since defendant was partially responsible for setting the situation where it was likely that Palmer would handle his gun recklessly, the prosecution concludes that defendant did encourage the commission of the offense.

The statute defendants were convicted of violating cited above provides:

"Any person who, because of carelessness, recklessness

or negligence, but not willfully or wantonly, shall cause or allow any firearm under his immediate control, to be discharged so as to kill or injure another person, shall be guilty of a misdemeanor, punishable by imprisonment in the State prison for not more than 2 years, or by a fine of not more than $2,000 or by imprisonment in the County jail for not more than one year, in the discretion of the Court."

A willful or wanton act, constituting gross negligence, would raise the offense to manslaughter.

The accessory statute (MCL 767.39; MSA 28.979) provides:

"Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense."

In *People v Penn,* 70 Mich App 638, 649; 247 NW2d 575 (1976), the Court speaks in terms of a *sharing* and a *conscious sharing* of the criminal act:

"Aiding and abetting makes a defendant a principal when he shares in any criminal act. * * * Knowledge of the principal's criminal purpose and a conscious sharing of the act are necessary."

The word "abet" adds the conscious element:

"ABET. To encourage, incite, or set another on to commit a crime. This word is always applied to aiding the commission of a crime. To abet another to commit a murder is to command, procure, or counsel him to commit it. Old Nat. Brev. 21; Co. Litt 475.

\* \* \*

" 'Aid' and 'abet' are nearly synonymous terms as generally used; but, strictly speaking, the former term does not imply guilty knowledge or felonious intent, whereas the word 'abet' includes knowledge of the wrongful purpose and counsel and encouragement in the commission of the crime." Black's Law Dictionary, Third Edition, p 9.

While writings generally use the conjunctive "and" when referring to this concept, the statute above is actually in the disjunctive. Therefore, in crimes involving lack of care rather than intent, there is no reason to require the latter. It is sufficient if defendant performs acts that aid in the creation of the circumstances or participates in an enterprise, the scope being such that the result is reasonably foreseeable.[1]

The line of cases involving delivering a car to a drunk driver resulting in death, such as *People v Marshall,* 362 Mich 170; 106 NW2d 842 (1961), are distinguishable on the basis of the scope of the enterprise and lack of presence of defendant. In *Marshall,* the Court stated at 173:

" * * * the killing of Coldiron *was not counseled by him, accomplished by another acting jointly with him, nor did it occur in the attempted achievement of some common enterprise."* (Emphasis added.)

The presence of defendant ties him closer to the enterprise and on this basis, *Story v United States,* 57 US App DC 3; 16 F2d 342; 53 ALR 246 (1926), and *People v Ingersoll,* 245 Mich 530; 222 NW 765 (1929), are closer in point. The owner was also a passenger. In *Ingersoll* the Court said at 535:

"Two persons may be charged as principals in negligent

---

[1] The Standard Jury Instruction 8:1:03 is appropriate only for intentional crimes.

homicide. *Story v United States,* 57 App DC 3 (16 Fed (2d) 342, 53 ALR 246). Negligent homicide is not a crime necessarily limited in commission to one person."

The scope of the enterprise is a fact question for each individual case. In the instant case, defendant was present, but he had a total lack of connection with the weapon itself.

In this case, defendant's liability is sought to be premised on his responsibility for the situation wherein the gun would be likely to be handled recklessly, creating a danger of death.

A few cases from other jurisdictions have spoken concerning a party's participation in a situation wherein negligence is the likely end result. In *State v DiLorenzo,* 138 Conn 281; 83 A2d 479 (1951), defendant and others operated an illegal still. Defendant was a supplier of ingredients, but not an actual operator of the still. At a time when defendant was not present, the still exploded due to faulty construction, causing the deaths of two bystanders. The Court held defendant liable for involuntary manslaughter on the basis that he was a partner in the common enterprise which carried on the illegal activity in a reckless and careless manner.

In *Commonwealth v Atencio,* 345 Mass 627; 189 NE2d 223 (1963), defendant was found guilty of manslaughter when one of the participants in a game of "Russian Roulette", of which defendant was also a player, unfortunately was the "loser" of the game. The Court held that defendant had a duty not to cooperate in the game and thereby encouraged the deceased in such reckless conduct.

In several cases in which a person was killed by a shot fired from one of a group of hunters (the actual shooter being unascertainable), courts have held each of the group liable for participating in

and encouraging reckless conduct by the whole group. See *State v Newberg,* 129 Or 564; 278 P 568 (1929), *Regina v Salmon,* LR6 QB Div 79 (Eng, 1880).

These cases appear applicable in part to the instant case. Assuming the jury believed the testimony of Mr. Burton, defendants planned the entry into the Burtons' apartment, defendant Palmer being armed. The purpose of the entry appeared to be violence against the Burtons, a situation raising a substantial likelihood that the gun could be handled in a reckless or careless manner. Defendant, while not actually careless with a gun, could be held responsible for his part of the common enterprise.

While most of the cited cases involved some personal negligence of the defendants, that was not true in *DiLorenzo, supra.* There the defendant, while free of personal negligence regarding the operation of the still, was found liable solely for his part in the enterprise out of which the negligence arose. Similarly, defendant Pitts, while free of negligence concerning the handling of the gun, may be found liable for his participation in the common scheme.

It is clear that the defendant was engaged in a common enterprise with his brother and should be held responsible as a principal for whatever transpired within the scope of it. The jury found careless use of a firearm resulting in death. So be it. Defendant clearly aided his brother in a set of circumstances wherein carelessness in the handling of a gun could reasonably be anticipated to cause death. The guilt of the aider or abettor depends on his own actions.

The jury was properly instructed and the conviction is affirmed.