PEOPLE v DANA TURNER

PEOPLE v PATRICIA TURNER

Docket Nos. 53627, 54521. Submitted May 4, 1982, at Detroit.—Decided October 5, 1982. Leave to appeal applied for.

Following a jury trial in the Wayne Circuit Court, Victor J. Baum, J., Joe Leandrew Davis, Dana Andrew Turner and Patricia Turner were convicted of armed robbery. Dana Turner was also convicted of a felony-firearm violation. Defendants Dana Turner and Patricia Turner appeal alleging several errors. *Held:*

1. The evidence was sufficient to convict Patricia Turner of armed robbery as an aider and abettor because she helped hide the money during the escape. Just because a completed escape is not a necessary element of the offense of armed robbery does not preclude it from being a part of the armed robbery. While the essential elements were completed, the offense continued during the escape.

2. Whenever a prosecutor's violation of a discovery order first comes to light once the trial has begun, as in this case, the evidence in question must be suppressed both for the prosecutor's case in chief and for impeachment purposes.

3. Under the facts of this case, it was harmless error beyond

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 171.

[2] 67 Am Jur 2d, Robbery § 11.

[3] 21 Am Jur 2d, Criminal Law § 353.

[4] 21A Am Jur 2d, Criminal Law §§ 770, 998.
    23 Am Jur 2d, Depositions and Discovery § 307.

[5] 23 Am Jur 2d, Depositions and Discovery § 307.

[6] 21A Am Jur 2d, Criminal Law §§ 798, 802, 803.

[7] 30 Am Jur 2d, Evidence § 1143.

[8, 9] 29 Am Jur 2d, Evidence § 373.
    Admissibility of evidence as to extrajudicial or pretrial identification of accused. 71 ALR2d 449.

[10] 29 Am Jur 2d, Evidence § 494.
    30 Am Jur 2d, Evidence § 1103.
    Consideration, in determining facts, of inadmissible hearsay introduced without objection. 79 ALR2d 890.

a reasonable doubt for the trial court to rule that it would permit impeachment with evidence not revealed pursuant to a pretrial discovery order in the event any of the defendants would have testified.

4. The on-the-scene identification of Dana Turner without the presence of counsel was proper in this case. Police officers may conduct an on-the-scene identification without the presence of counsel at any time promptly after the crime, except in the following situations: first, where the police have very strong evidence that the person stopped is the culprit and, second, where the police have made a valid arrest of the suspect for a separate crime, they may subject the suspect to an on-the-scene identification without the presence of counsel unless they have "more than a mere suspicion" that the subject was responsible for the second crime to which the identification pertains. Strong evidence that the person stopped is the culprit exists where the suspect has himself decreased any exculpatory motive by confessing or presenting the police with either highly distinctive evidence of the crime or a highly distinctive personal appearance or where the close proximity in place and time to the scene of the crime presents strong evidence that the person followed or stopped by the police is the culprit.

5. The on-the-scene identification involved here was not improperly suggestive.

6. Inadmissible hearsay was improperly allowed into the trial when two police officers testified that Dana Turner had been positively identified at the on-the-scene identification. However, because no one objected, the Court of Appeals will not reverse absent manifest injustice. There was no manifest injustice because Dana Turner had earlier been positively identified in the trial, therefore, the inadmissible hearsay was merely cumulative.

Affirmed.

1. CRIMINAL LAW — AIDER AND ABETTORS — SPECIFIC INTENT.

The prosecutor need only prove that the defendant performed an act that aided in the circumstances or participated in the criminal enterprise to convict the defendant of a crime as an aider and abettor, however, the prosecutor must show that the defendant had the actual specific intent to aid in the crime or knew that the principal had the required intent since mere presence or knowledge is insufficient.

2. CRIMINAL LAW — ROBBERY — ASPORTATION.

A completed escape is unnecessary to constitute asportation since

any movement of goods, even if by the victim under the direction of the defendant, constitutes asportation for purposes of a robbery conviction.

3. CRIMINAL LAW — ROBBERY — ESCAPE.

Robbery is a continuous offense which is not complete until the perpetrators reach a place of temporary safety; while the essential elements may already be completed, the offense continues during the escape.

4. CRIMINAL LAW — DISCOVERY.

A principal purpose of discovery is to advise defense counsel what the defendant faces in standing trial thereby permitting a more accurate evaluation of the factors to be weighed in considering a disposition of the charges without a trial; the importance of disclosure in the preparation of a defense and in promoting a fairer and more efficient administration of the criminal justice system generally outweighs the chance that disclosure may increase the likelihood of perjury by a defendant.

5. CRIMINAL LAW — DISCOVERY — SUPPRESSION OF EVIDENCE.

Whenever a prosecutor's violation of a discovery order first comes to light once the trial has begun, the evidence in question must be suppressed both for the prosecutor's case in chief and for impeachment.

6. CRIMINAL LAW — ON-THE-SCENE IDENTIFICATIONS — RIGHT TO COUNSEL.

Police officers may conduct an on-the-scene identification without the presence of counsel any time promptly after the crime, except in certain situations: first, where the police have very strong evidence that the person stopped is the culprit and, second, where the police have made a valid arrest of the suspect for a separate crime, unless they have "more than a mere suspicion" that the suspect was responsible for the second crime to which the identification pertains.

7. CRIMINAL LAW — ON-THE-SCENE IDENTIFICATIONS — WORDS AND PHRASES — STRONG EVIDENCE.

Strong evidence exists that the person stopped by the police is the perpetrator of the crime under investigation, for purposes of an on-the-scene identification without the presence of counsel, where the suspect has himself decreased any exculpatory motive by confessing or presenting the police with either highly distinctive evidence of the crime or a highly distinctive personal appearance or where the close proximity in place and

time to the scene of the crime presents strong evidence that the person followed or stopped by the police is the culprit.

8. CRIMINAL LAW — IDENTIFICATION EVIDENCE — THIRD-PARTY TESTIMONY — RULES OF EVIDENCE.

Third-person testimony concerning prior identification of a criminal defendant should be confined to a narration of the circumstances surrounding the identification and should not include any statement of the identification itself (MRE 801[d][1]).

9. CRIMINAL LAW — IDENTIFICATION EVIDENCE — THIRD-PARTY EVIDENCE — HEARSAY.

Third-person testimony by police officers that the defendant in a criminal trial had been positively identified at an on-the-scene identification is inadmissible hearsay evidence.

10. APPEAL — HEARSAY — PRESERVING QUESTION.

The erroneous admission of hearsay testimony, unobjected to at trial, will not cause reversal on appeal absent manifest injustice.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Nancy R. Alberts,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Gail Rodwan),* for defendant on appeal.

Before: M. J. KELLY, P.J., and T. M. BURNS and MacKENZIE, JJ.

T. M. BURNS, J. Defendants were convicted after a jury trial on June 3, 1980, along with Joe Leandrew Davis, of armed robbery contrary to MCL 750.529; MSA 28.797. Defendant Dana Turner was also convicted of felony-firearm, contrary to MCL 750.227b; MSA 28.424(2). He received consecutive terms of from 6 to 15 years and 2 years imprisonment. Patricia Turner received a

term of from 2 to 6 years imprisonment. Both appeal as of right.

In the early morning hours of February 14, 1980, Dana Turner robbed a Total Petroleum gas station attendant in Livonia. He escaped on foot but was captured within the hour in a car driven by Davis. Patricia Turner sat in the car's passenger's side.

Defendant Patricia Turner first argues that the evidence against her was insufficient to convict her of armed robbery. The only evidence presented against her was that she was in the passenger's side of the getaway car after the robbery had occurred and that the money taken in the robbery was later found inside Patricia Turner's bra.

To convict a defendant of a crime as an aider and abettor, the prosecutor need only prove that defendant performed an act that aided in the circumstances or participated in the criminal enterprise. *People v Pitts,* 84 Mich App 656; 270 NW2d 482 (1978). However, the prosecutor must show that the defendant had the actual specific intent to aid in the crime or knew that the principal had the required intent. *People v Rigsby,* 92 Mich App 95; 284 NW2d 499 (1979). Mere presence or knowledge is insufficient. *People v Burrel,* 253 Mich 321; 235 NW 170 (1931).

Patricia Turner contends that the evidence shows at most that she was guilty of being an accessory after the fact (MCL 750.505; MSA 28.773), and not an aider and abettor. While an aider and abettor is now prosecuted as if a principal (MCL 767.39; MSA 28.979), an accessory after the fact is not:

"An 'accessory after the fact', at common law, according to Professor Perkins, is 'one who, with knowledge of

the other's guilt, renders assistance to a felon in the effort to hinder his detection, arrest, trial or punishment'. No case decided by this Court has construed the aiding and abetting statute to include accessories after the fact." *People v Lucas,* 402 Mich 302, 304-305; 262 NW2d 662, 663 (1978). (Footnote omitted.)

Patricia Turner argues that the crime of robbery was completed before she participated in the escape because all of the elements, including asportation, were completed. She claims that the prosecution confused the escape with the asportation element and so concluded that the robbery was incomplete until the escape had been perfected.

We agree that a completed escape is unnecessary to constitute asportation. "Any movement of goods, even if by the victim under the direction of defendant * * * constitutes asportation * * *." *People v McGuire,* 39 Mich App 308, 314; 197 NW2d 469 (1972). See also *People v Royce Alexander,* 17 Mich App 30; 169 NW2d 190 (1969); *People v Brightwell,* 114 Cal App 3d 280; 170 Cal Rptr 473 (1980). However, robbery is also a continuous offense: it is not complete until the perpetrators reach temporary safety. *People v Clark,* 113 Mich App 477; 317 NW2d 664 (1982); *People v Salas,* 7 Cal 3d 812; 103 Cal Rptr 431; 500 P2d 7 (1972). As such, while the essential elements were completed, the offense continued during the escape. The evidence is, therefore, sufficient to convict Patricia Turner of armed robbery as an aider and abettor because she helped hide the money during the escape.

This same conclusion was reached in *People v Jardine,* 116 Cal App 3d 907; 172 Cal Rptr 408 (1981). There, the defendant argued that he was an accessory after the fact because he had merely driven the getaway car and had not known before-

hand or even during the crime that a robbery was about to occur or was occurring. The Court countered:

"Since a robbery is a continuing crime which is not completed until the robbers reach a place of temporary safety, Rucker's assistance in the escape was necessarily a participation in the robbery." 116 Cal App 3d 920; 172 Cal Rptr 414.

Superficially this reasoning seems to be contradictory. On the one hand, a criminal is guilty of a completed robbery and not merely of an attempt if he moves the stolen goods a short distance. *Royce Alexander, supra.* On the other hand, the crime is continuous and not completed until the parties have reached temporary safety. Thus, a person who aids during an escape is guilty as an aider and abettor although the crime has apparently concluded. Although these two legal principles may seem to create a double-edged sword, they do not. Just because a completed escape is not a necessary element of the offense does not preclude it from being a part of it. See *People v Price,* 25 Cal App 3d 576; 102 Cal Rptr 71 (1972).

Both defendants argue that the trial judge improperly permitted impeachment with evidence not revealed pursuant to a pretrial discovery order. The prosecutor was ordered to supply "a fully complete list of all items confiscated from the scene of the alleged crime, from any of the defendants' possession or in possession of investigative— or in the process of investigating the alleged crime". The prosecutor did not list bullets found in Patricia Turner's purse after her arrest. Because such an omission violated the discovery order, the trial judge suppressed the bullets for use in the prosecutor's case in chief. However, the court did

allow the prosecutor to use them for impeachment purposes should any of the defendants testify. Because of this ruling all three defendants chose not to testify although all had indicated their intentions to do so in opening statements.

Although the prosecution does not contend that the discovery order was not violated, it claims that the trial judge did not err in admitting the evidence for impeachment purposes. At this time, Michigan courts are apparently split on whether or not such evidence should be admitted for impeachment. In *People v Lynn,* 91 Mich App 117; 283 NW2d 664 (1979), *aff'd* 411 Mich 291; 307 NW2d 61 (1981), this Court refused to reverse even though the defendant was impeached with a statement not made available to him despite a discovery order. On the other hand, this Court did reverse in *People v Pace,* 102 Mich App 522; 302 NW2d 216 (1980). There, not only was the discovery order violated by the failure to disclose an out-of-court statement, but the prosecutor failed to inform either the trial judge or the defendant that the statement existed until it was actually used to impeach the defendant. This Court noted:

"In light of the discovery order, defense counsel had a right to rely on his belief that defendant had made no other statements to the police besides those disclosed which might cast doubts on defendant's version of the events in question.

\* \* \*

"As a matter of trial strategy, defense counsel might have advised his client not to testify had he been aware of the statements. Assuming that defendant would have testified anyway, some strategy for minimizing their impact might have been adopted." *Pace,* p 531.

The prosecution attempts to distinguish *Pace* in

several ways. First, the discovery order in *Pace* specified that any evidence not turned over pursuant to the order would be suppressed for either the prosecutor's case in chief or for impeachment. The present discovery order did not contain such a clause. However, this distinction is irrelevant; the clause was not considered in the *Pace* analysis.

The prosecutor next contends that the trial judge in *Pace* did not suppress until after the prosecutor had attempted to impeach the defendant. In the present case, the trial judge suppressed the evidence before any of the defendants could testify. Therefore, defendants were given the opportunity to reassess their decisions to testify. This distinction is likewise irrelevant. Defendants were equally surprised here because each defendant stated in opening statement that he or she would testify. The prosecutor's failure to produce the evidence did not come to light until after the opening statements. Defendants should not be forced to change their strategy midway through the trial: "The defense had every right to rely fully upon the prosecution's answer. This right of reliance extended throughout the trial." *State v Cowan,* 156 W Va 827; 197 SE2d 641, 647 (1973). Furthermore, the jury could not help but to have noticed that defendants did not in fact testify as promised.

The prosecutor argues that, despite this reliance and unfair surprise, such evidence should be allowed in for impeachment to prevent the defendants from lying under the protection of the discovery order exclusion. In *United States v Havens,* 446 US 620; 100 S Ct 1912; 64 L Ed 2d 559 (1980); *Harris v New York,* 401 US 222; 91 S Ct 643; 28 L Ed 2d 1 (1971), and *Walder v United States,* 347 US 62; 74 S Ct 354; 98 L Ed 503 (1954), the

Supreme Court permitted impeachment with evidence suppressed because it had been illegally seized.

*Pace* distinguished this line of cases because they had nothing to do with discovery. In the *Havens* situation, a defendant is aware that the prosecutor not only knows about the evidence but fully intends to use it if possible. However, where the prosecutor has failed to disclose evidence despite a discovery order, the defendant does not know whether or not it will be used. As such, the unfair surprise abridges defendants' right to a fair trial: "the violation of the court's order is the key to his argument". *Pace*, p 533; 302 NW2d 220. Moreover:

> "The importance of disclosure of a defendant's statements to authorities in the preparation of his defense and in promoting a fairer and more efficient administration of the criminal justice system is now generally thought to outweigh the change that disclosure may increase the likelihood of perjury by a defendant in those cases that go to trial." *United States v Lewis,* 167 US App DC 232, 236; 511 F2d 798, 802 (1975).

This reasoning applies to the present case.

In addition, we note that the statement in *Pace* was not so obviously incriminating that the defendant would have been expected to tell defense counsel. The *Pace* Court left that situation for the future. 102 Mich App 532, fn 3; 302 NW2d 220, fn 3. In the present case, the bullets found in Patricia Turner's purse were obviously incriminating. This distinction is irrelevant. Defendant has the right as a matter of fundamental fairness to rely upon the prosecution's statement of its expected evidence. Discovery exists to allow the defendant a decent opportunity to prepare and to extend to

him the fundamental fairness which the adversary system seeks to provide. *State v Johnson,* 524 SW2d 97, 101 (Mo, 1975). Furthermore:

"[A] principal purpose of discovery is to advise defense counsel what the defendant faces in standing trial; it permits a more accurate evaluation of the factors to be weighed in considering a disposition of the charges without trial. While we cannot know whether such disclosure would in this case have led to disposition without trial, we do know that such disclosure does result in such dispositions in many cases." *Lewis, supra,* 167 US App DC 236; 511 F2d 802.

Therefore, whenever a prosecutor's violation of a discovery order first comes to light once the trial has begun, the evidence in question must be suppressed both for the prosecution's case in chief and for impeachment. We need not decide what would happen if the suppression were to have occurred before the trial began. See *United States v Sukumolachan,* 610 F2d 685 (CA 9, 1980).

The next question is whether or not the error was harmless beyond a reasonable doubt. See *Pace,* p 531, fn 2. We conclude that it was. In *Pace,* the impeachment occurred while the defendant was testifying. Here, not only did no impeachment actually occur, but defendants were given some time to reevaluate and counter the damage. The prejudice, although real, was just not that great. See *United States v Arcentales,* 532 F2d 1046 (CA 5, 1976). Furthermore, the evidence was to be allowed in merely for impeachment purposes and not in the prosecution's case in chief. Under this case's facts, we find the error to be harmless beyond a reasonable doubt. See *State v Giberson,* 153 NJ Super 241; 379 A2d 480 (1977).

Defendants next argue that their Sixth Amend-

ment right to counsel was abridged when the police conducted an on-the-scene identification without the presence of counsel. The police officers who arrested defendants were in the vicinity of Middlebelt and I-96 on a different call when they received the report of a robbery at the Total station. The broadcast stated that a black male, about 20-25 years of age, with a mustache and a goatee (or facial hair) had committed the robbery. He had last been seen running north from the gas station. After checking out one car in the area, the police noticed defendants' car make a U-turn and then drive onto the Jeffries Freeway. They saw a black man driving the car and a black woman seated beside him. After they approached the car, the car took off and a 100-mph chase ensued. During the chase, they noticed a passenger in the back seat who fit the robber's description. They then saw a coat thrown from the passenger's side.

The officers testified that they believed that they had probable cause to arrest defendants after they stopped them. Soon after arresting the car's occupants (Cana and Patricia Turner and Joe Davis), they returned Dana Turner to the Total station where the three victims positively identified him. Defendants now argue that his identification was invalid because he did not have his lawyer present.

In Michigan, a defendant is generally entitled to have counsel present during an identification. *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974). However, an exception is allowed for a prompt on-the-scene identification, *People v Franklin Anderson,* 389 Mich 155, 187, fn 23; 205 NW2d 461, 476, fn 23 (1973), for two reasons. First, the police must know whom to arrest. *People v Curtis Williams,* 57 Mich App 612; 226 NW2d 584 (1975). Second, such

an on-the-scene identification may exculpate the defendant. *People v Dixon,* 85 Mich App 271; 271 NW2d 196 (1978).

Should an on-the-scene identification without the presence of counsel be allowed when the above rationales are not present? Michigan courts have split on this issue. In *Dixon, supra,* this Court answered the question negatively. *Dixon* held that, where the police have more than a mere suspicion, they may not return the defendant to the scene of the crime; instead, they must permit the defendant's counsel to be present. *Dixon* relied on *People v Patskan,* 387 Mich 701; 199 NW2d 458 (1972), where the police pursued the defendant from the scene of the crime into a nearby field. They then returned him to the scene of the crime where the witnesses identified him. The Supreme Court held that that procedure violated the defendant's Sixth Amendment right to counsel. See also *People v Starks,* 107 Mich App 377; 309 NW2d 556 (1981), *lv den* 413 Mich 901 (1982).

On the other hand, *People v Coward,* 111 Mich App 55; 315 NW2d 144 (1981), rejected *Dixon.* There, this Court adopted a blanket rule allowing the police to conduct an on-the-scene identification without the presence of counsel within minutes after the crime, whether or not the underlying reasons were present. *Coward* relied on *Dixon's* dissent which had merely stated that this procedure is sanctioned by *Franklin Anderson, supra.* In the *Dixon* dissent *Patskan* was distinguished as having been decided before *Franklin Anderson.*

Although *Dixon* is logically compelling, it presents practical problems that become apparent in the present case. Had the police officers in the present case believed they had probable cause and then conducted a line-up identification, they ran

the risk that a court would suppress the identification as the fruit of the poisonous tree if probable cause in fact did not exist. *Wong Sun v United States,* 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963). On the other hand, had the police believed they did not have probable cause (but in fact did) and conducted an on-the-scene identification without the presence of counsel, the identification would likewise be suppressed.

Despite these problems, we do not endorse *Coward* because it fails to protect a defendant's right to counsel adequately.[1] *Franklin Anderson* enunciated the on-the-scene exception in a footnote without really explaining it. Because the two cases can readily be harmonized, we cannot interpret this terse reference as overruling a case decided just one year earlier.

However, we also decline to follow *Dixon.* Police officers are neither lawyers nor high wire trapeze artists, nor were they meant to be. Sometimes, intricate line drawing problems are unavoidable. However, we recognize the practical difficulties that police have in following rules designed to balance constitutional values with good police work. Therefore, we would allow the police officers to conduct an on-the-scene identification without the presence of counsel any time promptly after the crime, except in certain situations. First, we require counsel to be present where the police have very strong evidence that the person stopped is the culprit. Strong evidence exists where the suspect has himself decreased any exculpatory motive, *i.e.,* where he has confessed or presented the police with either highly distinctive evidence of the crime or a highly distinctive personal ap-

---

[1] Furthermore, *Coward* did not adequately consider that on-the-scene identifications are inherently suggestive. *Russell v United States,* 133 US App DC 77; 408 F2d 1280 (1969).

pearance. *Patskan* itself presents another such example. The close proximity in place and time to the scene of the crime presented strong evidence that the man the police officer followed was the culprit. In these situations, the exculpatory rationales for both police and suspect are absent. If the defendant is that highly identifiable, counsel is that much more important. Moreover, the police have far less of a need to eliminate this person from suspicion.[2]

Even though we are modifying *Dixon's* test in the typical on-the-scene identification situation, we retain *Dixon's* "more than a mere suspicion" standard where the police have already validly arrested the suspect for a separate offense. Although the exculpatory rationale from the suspect's point of view (avoiding arrest) is absent, we recognize that under certain circumstances the exculpatory rationale from the police point of view is not. While the police file may be closed on the one crime, the actual culprit may yet be loose on the other. The police, therefore, need some leeway in eliminating this suspect from the rest of those people who might have committed the crime. Therefore, where the police have made a valid arrest for one crime, they may subject the suspect to an on-the-scene identification unless they have "more than a mere suspicion" that the suspect was responsible for the second crime.

Although we do not at this time define the precise boundaries of this test, we rule that the present on-the-scene identification without the presence of counsel was proper.

---

[2] If the police are concerned that they may have substantial evidence, they may protect both their and the defendant's interests and conduct an identification with counsel present. If they are concerned about whether or not they have such "substantial evidence", they most likely already have probable cause.

Defendants next argue that the identification itself was improperly suggestive. We disagree.

Defendants last argue that inadmissible hearsay was allowed into the trial. At the trial, two police officers testified that defendant had been positively identified at the on-the-scene identification. This Court has split on this issue as well. In *People v Turner,* 116 Mich App 421; 323 NW2d 425 (1982), this Court ruled that such evidence is allowable under MRE 801(d). *Turner* relied on *People v Sanford,* 402 Mich 460; 265 NW2d 1 (1978). However, we reject *Turner* based on *People v Prophet,* 101 Mich App 618; 300 NW2d 652 (1980). *People v Poe,* 388 Mich 611; 202 NW2d 320 (1972), clearly held such evidence inadmissible. We do not read *Sanford* as overruling *Poe.* See *Turner, supra,* (D. C. RILEY, J., *concurring); People v Price,* 112 Mich App 791; 317 NW2d 249 (1982); *People v Mock,* 108 Mich App 384; 310 NW2d 390 (1981); *People v Hoerl,* 88 Mich App 693; 278 NW2d 721 (1979); *People v Washington,* 84 Mich App 750; 270 NW2d 511 (1978).[3] However, because no one objected, we do not reverse absent manifest injustice. *People v Duncan,* 402 Mich 1; 260 NW2d 58 (1977). Because Dana Turner had earlier been positively identified in the trial, the inadmissible hearsay was merely cumulative. Therefore, we do not find manifest injustice. *People v Buero,* 59 Mich App 670; 229 NW2d 880 (1975).

Affirmed.

---

[3] Furthermore, under some circumstances, allowing a third party to testify about a prior identification possibly violates the Sixth Amendment confrontation clause. See *Ohio v Roberts,* 448 US 56; 100 S Ct 2531; 65 L Ed 2d 597 (1980).