**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Maura D. Corrigan

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 20, 2004**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                     No. 122548

JONATHAN D. HICKMAN,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

CORRIGAN, C.J.

In this case, we must determine when the right to counsel attaches to corporeal identifications. We adopt the analysis of *Moore v Illinois*, 434 US 220; 98 S Ct 458; 54 L Ed 2d 424 (1977), and hold that the right to counsel attaches only to corporeal identifications conducted at or after the initiation of adversarial judicial criminal proceedings. To the extent that *People v Anderson*, 389 Mich 155; 205 NW2d 461 (1973), goes beyond the constitutional text and extends the right to counsel to a time before the initiation of adversarial criminal

proceedings, it is overruled. The Court of Appeals decision is affirmed.

## I. FACTUAL HISTORY AND PROCEDURAL POSTURE

Defendant was convicted of possession of a firearm during the commission or attempted commission of a felony, MCL 750.227b(1); conspiracy, MCL 750.157a; and armed robbery, MCL 750.529, for robbing the complainant of $26 and two two-way radios. The complainant testified that two men approached him from behind and robbed him. He testified that one of the men, later identified as defendant, pointed a gun at his face while the other person took the radios and money. The complainant then called the police and gave a description of the two men, as well as a description of the gun.

An officer soon saw a man fitting the description of the man with the gun. The man, later identified as defendant, was caught after a foot chase. During the chase, the police saw defendant throw something and they later recovered a chrome handgun that matched the complainant's description of the gun. Defendant was carrying one of the two-way radios.

Approximately ten minutes later, an officer took the complainant to a police car in which defendant was being held. The officer asked the complainant if the person

2

sitting in the police car was involved in the robbery. The complainant immediately responded that defendant was the man who had the gun.

Defendant's motion to suppress an on-the-scene identification by the victim on the ground that defendant was not represented by counsel at the time of the identification was denied, and defendant was convicted. The Court of Appeals affirmed defendant's conviction.[1] The Court held that the prompt on-the-scene identification did not offend the requirements set forth in *Anderson* and rejected defendant's due process claim, holding that the identification was not unduly suggestive.

Defendant appealed, and this Court granted leave, limited to the issue "whether counsel is required before an on-the-scene identification can be admitted at trial." 468 Mich 944 (2003).

## II. STANDARD OF REVIEW

This Court reviews de novo questions of law relevant to a motion to suppress. *People v Hawkins*, 468 Mich 488, 496; 668 NW2d 602 (2003). The inquiry here involves issues of constitutional law, which are also reviewed de novo. *People v Herron*, 464 Mich 593, 599; 628 NW2d 528 (2001).

---

[1] Unpublished opinion per curiam, issued September 17, 2002 (Docket No. 232041).

3

## III. DISCUSSION

### A. BACKGROUND: *PEOPLE v ANDERSON*

In *Anderson*, the right to counsel was extended to all pretrial corporeal identifications, including those occurring before the initiation of adversarial proceedings. This extension of *United States* v *Wade*, 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967), to all pretrial identification procedures was based on "psychological principles," 389 Mich 172-180, and "social science," 389 Mich 182.

Notably absent was any grounding in our federal constitution or state constitution. In *People v Jackson*, 391 Mich 323, 338; 217 NW2d 22 (1974), this Court acknowledged that the *Anderson* rules were not constitutionally mandated:

> The . . . *Anderson* rules . . . represent the conclusion of this Court, *independent of any Federal constitutional mandate*, that, both before and after commencement of the judicial phase of a prosecution, a suspect is entitled to be represented by counsel at a corporeal identification . . . . [Emphasis added.]

The *Jackson* Court affirmed the *Anderson* rules, however, as an exercise of the Court's "constitutional power to establish rules of evidence applicable to judicial proceedings in Michigan courts and to preserve best evidence eyewitness testimony from unnecessary alteration

4

by unfair identification procedures . . . ."  *Id.* at 338-339.  Finally, in *People v Cheatham*, 453 Mich 1, 9 n 8; 551 NW2d 355 (1996), this Court noted in obiter dictum that the right to counsel under Const 1963, art 1, § 20 "attaches only at or after the initiation of adversary judicial proceedings by way of formal charge, preliminary hearing, indictment, information, or arraignment."

Thus, the *Anderson* rules lack a foundation in any constitutional provision, whether state or federal. Instead, the rules reflect the policy preferences of the *Anderson* Court. Similarly, the *Jackson* Court's attempt to rationalize the promulgation of the rules as an exercise of the Court's authority to promulgate rules of evidence is unpersuasive.  The *Anderson* rules encompassed more than purely evidentiary matters,[2] and the rationale underlying them has since been disapproved in *Moore*.

## B. *MOORE V ILLINOIS*

In *Moore*, the United States Supreme Court adopted the plurality opinion in *Kirby v Illinois*, 406 US 682; 92 S Ct 1877; 32 L Ed 2d 411 (1972), holding:

---

[2]See *McDougall v Schanz*, 461 Mich 15, 29; 597 NW2d 148 (1999), which disapproved of previous blanket statements of authority over all matters relating to the admission of evidence.

5

[T]he right to counsel announced in *Wade*[*supra*] and *Gilbert* [*v California*, 388 US 263; 87 S Ct 1951; 18 L Ed 2d 1178 (1967),] attaches only to corporeal identifications conducted "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment" . . . because the initiation of such proceedings "marks the commencement of the criminal prosecutions to which alone the explicit guarantees of the Sixth Amendment[3] are applicable." [*Moore, supra* at 226-227 (citations omitted).]

The Court further noted that identifications conducted before the initiation of adversarial judicial criminal proceedings could still be challenged:

In such cases, however, *due process* protects the accused against the introduction of evidence of, or tainted by, unreliable pretrial identifications obtained through unnecessarily suggestive procedures. [*Id.* at 227 (emphasis added; citations omitted).]

---

[3] **The Sixth Amendment of the United States Constitution provides:**

*In all criminal prosecutions*, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of counsel for his defense. [Emphasis added.]

Therefore, it is now beyond question that, for federal Sixth Amendment purposes, the right to counsel attaches only at or after the initiation of adversarial judicial proceedings.

This conclusion is also consistent with our state constitutional provision, Const 1963, art 1, § 20, which provides:

> *In every criminal prosecution*, the accused shall have the right to a speedy and public trial by an impartial jury, which may consist of less than 12 jurors in prosecutions for misdemeanors punishable by imprisonment for not more than 1 year; to be informed of the nature of the accusation; to be confronted with the witnesses against him or her; to have compulsory process for obtaining witnesses in his or her favor; to have the assistance of counsel for his or her defense; to have an appeal as a matter of right, except as provided by law an appeal by an accused who pleads guilty or nolo contendere shall be by leave of the court; and as provided by law, when the trial court so orders, to have such reasonable assistance as may be necessary to perfect and prosecute an appeal. [Emphasis added.]

As Judge YOUNG noted in his opinion in *People v Winters*, 225 Mich App 718, 723; 571 NW2d 764 (1997), neither the *Anderson* decision nor the *Jackson* decision was based on our state constitutional provision; therefore, those cases cannot be read as expanding art 1, § 20 protections beyond those provided by the Sixth Amendment. Further, this Court has already noted in *Cheatham,* albeit in obiter dictum,

that a defendant's right to counsel under art 1, § 20 attaches only at or after the initiation of adversarial judicial proceedings. This Court also held in *People v Reichenbach*, 459 Mich 109, 119-120; 587 NW2d 1 (1998), quoting *People v Pickens*, 446 Mich 298, 318; 521 NW2d 797 (1994):

> [T]here exists no structural differences with regard to the right to assistance of counsel between federal and Michigan provisions. Moreover, no peculiar state or local interests exist in Michigan to warrant a different level of protection with regard to the right to counsel in the instant case. Both the federal and the state provisions originated from the same concerns and to protect the same rights.

Because the *Moore* analysis is consistent with both US Const, Am VI and Const 1963, art 1, § 20, which expressly apply only to criminal prosecutions, we adopt that analysis and hold that the right to counsel attaches only to corporeal identifications conducted at or after the initiation of adversarial judicial criminal proceedings.[4]

Further, we agree with Judge Young's observation in *Winters* that the *Anderson* decision generated considerable

---

[4] Because the instant case involves a corporeal identification conducted *prior* to the initiation of adversarial judicial proceedings, we do not, contrary to the dissent's contention, address whether a defendant has a right to an attorney *after* the initiation of adversarial judicial proceedings during a photographic showup. *Post* at 2.

8

confusion regarding its proper application. First, the Court in *People v Marks*, 155 Mich App 203, 209-210; 399 NW2d 469 (1986), noted that although *Anderson* appeared to be a Sixth Amendment case, it was really divorced from any constitutional considerations. Nevertheless, the *Marks* Court observed that the issue of on-the-scene identification is still often raised in the context of the Sixth Amendment right to counsel.

The *Winters* Court also lamented the lack of any simple, practical standard regarding on-the-scene corporeal identifications. In *People v Dixon*, 85 Mich App 271, 280-281; 271 NW2d 196 (1978), the Court held that if the police have "more than a mere suspicion" that the suspect is wanted for the crime, there can be no on-the-scene corporeal identification; rather, the suspect must be taken to the police station and participate in a lineup with counsel present. In *People v Turner*, 120 Mich App 23, 36; 328 NW2d 5 (1982), however, the Court found the *Dixon* rule too difficult[5] and, instead, held that police may conduct on-the-scene identifications without counsel unless the police have "very strong evidence" that the person stopped

---

[5] It must be noted that the *Turner* Court did retain the *Dixon* standard where the police have already validly arrested the suspect for an unrelated offense. *Turner, supra* at 37.

is the perpetrator. "Very strong evidence" was defined as "where the suspect has himself decreased any exculpatory motive, *i.e.*, where he has confessed or presented the police with either highly distinctive evidence of the crime or a highly distinctive personal appearance." *Id.* at 36-37.

As the *Winters* Court noted, the *Turner* "strong evidence" rule is hardly more workable than *Dixon*'s "more than a mere suspicion" rule. Rather than perpetuate the confusion in this area, we take this opportunity to adopt the *Moore* analysis and clarify that the right to counsel attaches only to corporeal identifications conducted at or after the initiation of adversarial judicial criminal proceedings. This eliminates any unwarranted confusion and allows the focus to be on whether the identification procedure used violates due process.[6]

---

[6]Although we recognize the importance of stare decisis, it is appropriate to overrule *Anderson* because, as explained above, it is clearly inconsistent with Const 1963, art 1, § 20. Further, there are no relevant "reliance" interests involved and overruling *Anderson* would, therefore, not produce any "practical real-world dislocations." See *Robinson v Detroit*, 462 Mich 439, 465-466; 613 NW2d 307 (2000). Contrary to the dissent's suggestion, this Court has never held that a "special justification" must be established before this Court will depart from precedent. *Post* at 9. Finally, as explained above, the courts have had considerable difficulty in

## IV. APPLICATION

The on-the-scene identification in this case was made before the initiation of any adversarial judicial criminal proceedings; thus, counsel was not required. Therefore, this Court affirms the decision of the Court of Appeals.

## V. CONCLUSION

The *Anderson* rule, extending the right to counsel to all pretrial identifications, is without constitutional basis. Consistently with both the United States Constitution and the Michigan Constitution, we adopt the straightforward analysis of *Moore v Illinois* and hold that the right to counsel attaches only to corporeal identifications conducted at or after the initiation of adversarial judicial criminal proceedings. The Court of Appeals decision is affirmed.

> Maura D. Corrigan
> Elizabeth A. Weaver
> Clifford W. Taylor
> Robert P. Young, Jr.
> Stephen J. Markman

---

applying *Anderson*, and the resulting confusion and instability also demonstrate the need to overrule *Anderson*.

**S T A T E   O F   M I C H I G A N**

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                                                                    No. 122548

JONATHAN D. HICKMAN,

    Defendant-Appellant.

_____

KELLY, J. (*dissenting*).

To the casual reader, the rationale for today's majority decision may be elusive. After all, as the majority correctly notes, the case deals with law that has been relatively well-settled for close to thirty years: a potential criminal defendant does not have a Sixth Amendment right to counsel during identifications that occur before the initiation of adversarial judicial proceedings, such as a formal charge or preliminary hearing. *Moore v Illinois*, 434 US 220, 226-227; 98 S Ct 458; 54 L Ed 2d 424 (1977); *People v Jackson*, 391 Mich 323, 338; 217 NW2d 22 (1974); see also *People Cheatham*, 453 Mich 1, 9 n 8; 551 NW2d 355 (1996), citing *People v Wright*, 441 Mich 140, 173; 490 NW2d 351 (1992) (Riley, J., dissenting);

*Moran v Burbine*, 475 US 412, 430; 106 S Ct 1135; 89 L Ed 2d 410 (1986).

Nor has this Court held that the protective rules enumerated by *People v Anderson*[1] and its progeny apply to on-the-scene identification procedures and require counsel during those procedures. *People v Anderson,* 389 Mich 155, 186 n 23; 205 NW2d 461 (1973). In fact, the opposite is true. *Id*.

Yet the majority undertakes today ostensibly to resolve these issues. Its purpose is to take away the potential defendant's entitlement to counsel during all preindictment[2] proceedings by overruling *Anderson* and its progeny. Hereafter, a defendant, in custody but not yet indicted, will no longer have the practical ability to challenge photographic or corporeal identification procedures. The police will be able to conduct such procedures without allowing a defendant's attorney to be present. Moreover, even after the initiation of adversarial judicial procedures, a criminal defendant will no longer have the right to counsel during a photographic showup.

---

[1]389 Mich 155, 186 n 23; 205 NW2d 461 (1973).

[2]For ease of explanation, I use the term "preindictment identifications" to refer to identifications that occur before the initiation of adversarial judicial proceedings.

Because I do not see any good reason to depart from longstanding precedent, I must respectfully dissent.

The majority is not correct in its assertion that, under *Anderson*, "the right to counsel was extended to all pretrial corporeal identifications, including those occurring before the initiation of adversarial proceedings." *Ante* at 4. *Anderson*, which itself dealt with the right to counsel for pretrial custodial photographic showup procedures, set forth "justified" exceptions, albeit arguably in dicta, for the absence of counsel at eyewitness identification procedures. Notably included as exceptions were emergency situations requiring immediate identification and "prompt, 'on-the-scene' corporeal identifications within minutes of the crime . . . ." *Id.*, at 187 n 23 (citations omitted). We have since specifically affirmed the *Anderson* exception for prompt on-the-scene identifications. *City of Troy v Ohlinger*, 438 Mich 477, 487; 475 NW2d 54 (1991).

The majority could reaffirm the *Anderson* exception for prompt on-the-scene identifications, or perhaps enlarge the explanation of the exception to provide a workable framework for the lower courts. Instead, it unnecessarily chooses to remove the *Anderson* protections from all preindictment identification procedures. It is an ill-

3

conceived decision that ignores principles of stare decisis. It also fails to consider the adverse effect on defendants' rights to be assured that pretrial identifications are not obtained through mistake or unnecessarily suggestive procedures.

In deciding to remove the *Anderson* protections for all preindictment identifications, the majority chooses to decide an issue already decided. It sweeps aside longstanding precedent, asserting that the *Anderson* protections reflect the policy preferences of the *Anderson* Court and that the *Jackson* Court failed to justify the *Anderson* Court's ruling.[3] Apparently the majority's own "policy preferences" outweigh those of the members of the *Anderson* Court and the *Jackson* Court, as well as other members of this Court. Unlike the majority, I believe

---

[3]The majority relies on *McDougall v Schanz*, 461 Mich 15, 29; 597 NW2d 148 (1999), for the proposition that this Court "disapproved of previous blanket statements of authority over all matters relating to the admission of evidence." I did not then, nor do I now, agree with the majority opinion in *McDougall*. But it is my understanding that *McDougall* was not a broad disapproval of blanket statements regarding the admission of evidence. Rather, it was a disapproval of a specific rule of evidence. Even the *McDougall* majority acknowledged that the line between substantive law and practice and procedure must be drawn case by case. *McDougall, supra* at 36. The *McDougall* decision concerned the interaction of statutes and this Court's constitutional rule-making authority over "practice and procedure." Because there is no statute at issue in this case, *McDougall* is not applicable.

4

*Anderson* was decided with due deference to the practical problems of ensuring accurate identifications. I am concerned that the majority's policy decision gives insufficient thought to the underlying rationale for our long-existing decision to grant counsel to defendants where practicable.

*Anderson* discussed at length the scope of the problem of misidentifications, particularly in the use of photographic identification procedures. *Anderson*, *supra* at 182-187, 192-220 Appendix A. These concerns have certainly not diminished with time. See, e.g., *Utah v Ramirez*, 817 P2d 774, 779-780 (Utah, 1991); Rutledge, *They all look alike: The inaccuracy of cross-racial identifications*, 28 Am J Crim L 207, 209-210 (2001); Brigham, *Disputed eyewitness identification evidence: important legal and scientific issues*, 36 Ct Rev 12, 12-13 (1999). Wise, *A survey of judges' knowledge and beliefs about eyewitness testimony,* 40 Ct Rev 6, 6-8 (2003); Risinger, *Three card monte, Monty Hall, modus operandi and "offender profiling": Some lessons of modern cognitive science for the law of evidence*, 24 Cardozo L Rev 193, 194 (2002). The latter law review article noted that the past century has seen the accumulation of literally thousands of studies on the weakness of eyewitness testimony. *Id.*

Defendant points out in his appellate brief that in 1996, after DNA identification techniques became more common, the United States Justice Department conducted a study of exonerated defendants and prepared a research report. Connors, *Convicted by juries, exonerated by science: Case studies in the use of DNA evidence to establish innocence after trial* (1996). The study was commissioned by the National Institute of Justice. It reviewed twenty-eight cases where the defendants had been exonerated through the use of DNA identification techniques.

Among the conclusions reached was that, in the majority of cases, "eyewitness testimony was the most compelling evidence. Clearly, however, those eyewitness identifications were wrong." *Id*. at 24. Notably, one of the significant factors of misidentification listed in the Justice Department report involves an issue directly raised in the instant case and the majority's decision to overrule *Anderson*: the potential susceptibility of eyewitnesses to suggestions from the police, whether intentional or unintentional. *Id*.

One of the major underpinnings of the *Anderson* decision, and the later affirmation in *Jackson*,[4] was the recognition of difficulties with obtaining reliable identification evidence. Courts and scholars have recognized the continued validity of these concerns. Nonetheless, this Court refuses to recognize that *Anderson's* rules were, in fact, grounded on more than a transient notion of what the Sixth Amendment requires.

The majority does so with barely a nod to the principle of stare decisis. As my frequent colleague in the dissent so well articulated recently, "[t]he doctrine of stare decisis is more than a fad and decades of precedent cannot be readily discounted as the majority suggests." *Monat v State Farm Ins Co*, 469 Mich 679, 699; 677 NW2d 843 (2004) (Cavanagh, J., dissenting). "The application of stare decisis is generally the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *People v Petit*, 466 Mich 624, 633; 648 NW2d 193 (2002) (citations and internal quotation marks omitted).

---

[4]*Jackson, supra* at 338-339.

Even if this Court has found that an error occurred, before it "'overrules a decision deliberately made, it should be convinced not merely that the case was wrongly decided, but also that less injury will result from overruling than from following it.'" *Id*. at 634, quoting *McEvoy v Sault Ste Marie*, 136 Mich 172, 178; 98 NW 1006 (1904). I take as my guide the following from the recent United Supreme Court opinion in *Dickerson v United States,* 530 US 428, 443-444; 120 S Ct 2326; 147 L Ed 2d 405 (2000)*,* discussing the requirement of *Miranda*[5] warnings during interrogations:

> Whether or not we would agree with *Miranda's* reasoning and its resulting rule, were we addressing the issue in the first instance, the principles of *stare decisis* weigh heavily against overruling it now. See, *e.g.*, *Rhode Island v. Innis*, 446 U.S. 291, 304, 64 L. Ed. 2d 297, 100 S. Ct. 1682 (1980) (Burger, C. J., concurring in judgment) ("The meaning of *Miranda* has become reasonably clear and law enforcement practices have adjusted to its strictures; I would neither overrule *Miranda*, disparage it, nor extend it at this late date"). While "'*stare decisis* is not an inexorable command,'" *State Oil Co. v. Khan*, 522 U.S. 3, 20, 139 L. Ed. 2d 199, 118 S. Ct. 275 (1997) (quoting *Payne v Tennessee*, 501 U.S. 808, 828, 115 L. Ed. 2d 720, 111 S. Ct. 2597 (1991)), particularly when we are interpreting the Constitution, *Agostini v. Felton*, 521 U.S. 203, 235, 138 L. Ed. 2d 391, 117 S. Ct. 1997 (1997), "even in constitutional cases, the doctrine carries such persuasive force that we have always

---

[5]*Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

8

required a departure from precedent to be supported by some 'special justification.'" *United States v. International Business Machines Corp.*, 517 U.S. 843, 856, 116 S. Ct. 1793, 135 L. Ed. 2d 124 (1996) (quoting *Payne*, *supra*, at 842 (SOUTER, J., concurring) (in turn quoting *Arizona v. Rumsey*, 467 U.S. 203, 212, 81 L. Ed. 2d 164 104 S. Ct. 2305 (1984))).

We do not think there is such justification for overruling *Miranda*. *Miranda* has become embedded in routine police practice to the point where the warnings have become part of our national culture. See *Mitchell v. United States*, 526 U.S. 314, 331-332, 143 L. Ed. 2d 424, 119 S. Ct. 1307 (1999) (SCALIA, J., dissenting) (stating that the fact that a rule has found "'wide acceptance in the legal culture'" is "adequate reason not to overrule" it). While we have overruled our precedents when subsequent cases have undermined their doctrinal underpinnings, see, *e.g.*, *Patterson v. McLean Credit Union*, 491 U.S. 164, 173, 105 L. Ed. 2d 132, 109 S. Ct. 2363 (1989), we do not believe that this has happened to the *Miranda* decision. If anything, our subsequent cases have reduced the impact of the *Miranda* rule on legitimate law enforcement while reaffirming the decision's core ruling that unwarned statements may not be used as evidence in the prosecution's case in chief.

In the instant case, the injury done by unnecessarily overruling *Anderson* is grave. Conversely, the continued use of its precedent would harm no one but those who fail in their duty to ensure that identifications are made under circumstances that render them reliable. The use of counsel during preindictment procedures has become part of the accepted practice in Michigan courts. I see nothing

even approaching a "special justification" to depart from precedent here.[6]

The majority incorrectly asserts that defendant's due process protections will be sufficient to protect the accused against the introduction of unreliable identification evidence. *Ante* at 6. Such an assertion ignores the reality of numerous preindictment identification procedures and this Court's attempt to ensure that these procedures lead to reliable information.

The fact that the majority has seen fit to unnecessarily overturn *Anderson* creates a Catch-22 for defendants during other preindictment identification procedures. Until today, a defendant who was not "formally" charged but in custody was entitled to an attorney during any identification procedure. Now, the only required persons in the room will be the investigating

---

[6]The majority states that this Court has never held that a "special justification" must be established before it will depart from precedent. *Ante* at 10, n 7. I disagree. See *Brown v Manistee Co Rd Comm*, 452 Mich 354, 365; 550 NW2d 215 (1996) (absent the rarest of circumstances, this Court should remain faithful to established precedent). It certainly could be said that the current majority does not share my view and that of *Brown*. See Delaney, *Stare decisis v The "New Majority": The Michigan Supreme Court's practice of overruling precedent, 1998-2002*, 66 Alb L Rev 871, 903-904 (2003). But I persist in clinging to this archaic notion despite the urging of my colleagues.

officer and the witness.  Where the defendant is presented to a potential witness during an on-the-scene identification, the defendant himself is present to observe the actions and words of the officer.  Arguably, a defendant who has been subjected to an unnecessarily suggestive on-the-scene identification procedure has the opportunity to present a coherent rationale for his arguments.

In contrast, a defendant who seeks to challenge a corporeal identification procedure will be effectively unable to do so.  He must stand before the one-way glass and trust the competence and conscience of the investigating officer. I doubt that J.R.R. Tolkien's image of Wormtongue whispering quietly into the ear of Theoden, King of Rohan[7] will be one that is frequently repeated in practice.  However, even an inadvertent suggestion will be imperceptible to a defendant who remains precluded from witnessing it.[8]  The majority is essentially creating a black box into which the defendant will not be allowed to

---

[7]See J.R.R. Tolkien. *The Lord of the Rings* (New York: Ballantine Books 1954-1974).

[8]See *United States v Wade*, 388 US 218, 228-230; 87 S Ct 1926; 18 L Ed 2d 1149 (1967) (recognizing that the "vagaries" of eyewitness testimony during a corporeal lineup can be effectively challenged only if there is adequate observation of the process of identification).

peer.  It then requires him to refute the premise that what occurred inside did not violate his right to due process.

Nothing in the majority's opinion provides for substitute protections to guard against overzealous individual officers or the failure of an officer to avoid or correct potentially suggestive procedures in these cases.  As one author has aptly noted, the fact that identification evidence is unique in character should instead warrant the imposition of greater protections, rather than less:

> In most situations the state simply collects preexisting evidence about a crime; through pretrial identifications the state creates a piece of evidence that would not otherwise exist. The creation of evidence, rather than its collection, should impose a special obligation on the state to behave correctly, because the creation of evidence presents heightened opportunity for wrongdoing and unfairness by the state and to the detriment of the defendant. [Rosenberg, *Rethinking the right to due process in connection with pretrial identification procedures:  An analysis and a proposal*, 79 Ky L J 259, 291-292 (1991). (emphasis omitted).]

I disagree with the majority's decision to effectively remove any ability for a criminal defendant to raise a due process argument relating to these preindictment identification procedures.  In so doing, I agree wholeheartedly with Justice Brennan's dissenting statement

in *Kirby v Illinois*, 406 US 682, 699 n 8; 92 S Ct 1877; 32 L Ed 2d 441 (1972):

> As the California Supreme Court pointed out, with an eye toward the real world, "the establishment of the date of formal accusation as the time wherein the right to counsel at lineup attaches could only lead to a situation wherein substantially all lineups would be conducted prior to indictment or information." *People v. Fowler*, 1 Cal. 3d 335, 344, 461 P. 2d 643, 650 (1969).

Until today, Michigan has not known this to occur. However, I seriously doubt that it will long be the case after the majority's ruling.

In addition, the majority claims that it is not deciding today whether a defendant retains the protection of counsel at custodial photographic showups, *ante* at 8 n 5. However, it is clear from the thrust of the majority opinion that such protections have been removed. *Anderson* itself involved a photographic lineup where the defendant was in custody before the photographs were shown to the witness. *Anderson*, *supra* at 160. Because of the Court's distrust of photographic identification procedures, it established rules regarding their use, including the right to counsel when a suspect is in custody. See *People v Kurylczyk*, 443 Mich 289, 298; 505 NW2d 528 (1993), citing *Anderson*, *supra* at 186-187.

The United States Supreme Court stated in *United States v Ash*,[9] that the Sixth Amendment does not guarantee the right to counsel at photographic displays where witnesses attempt to identify a suspect. This is true, even when the suspect is in custody. *Anderson, supra* at 186-187. However, as noted by the majority, *ante* at 4, *Jackson* took *Ash* into consideration and nevertheless affirmed the *Anderson* decision to extend the protections to suspects in Michigan. It did so using the power of the Court to exercise its authority to establish rules of evidence. *Jackson, supra* at 338.

Today, the majority decides to overrule *Anderson* and repudiate the *Jackson* rationale. *Ante* at 5. Therefore, it has removed the protection of counsel at custodial photographic showups. I leave for another day an enumeration of the additional areas of law affected by the majority's sweeping language and abdication of judicial power.

I realize that it might be difficult at times for the majority to keep track of the specific cases it is overruling. This is due in part to its propensity to reach for issues and decide them with a broad pen stroke.

---

[9]413 US 300, 318; 93 S Ct 2568;37 L Ed 2d 619 (1973).

However, when one specifically mentions a case by name, it should be easy to remember that its holding must be analyzed before it is rejected.

Finally, I disagree with the majority's disposition of the question whether the identification procedure used here violated defendant's right to due process irrespective of whether a Sixth Amendment right to counsel existed. Especially because defendant was sixteen at the time of his arrest, I find troubling the majority's abdication of the issue to the Court of Appeals without any further explanation.

In conclusion, I believe that the majority has reached out to take this case needlessly in order to address constitutional questions. I would further find that, whatever the scope of the protections of the Sixth Amendment or Michigan's Constitution, the decision to overrule *Anderson* is misguided. It has been made without due deference to the principles of stare decisis and without a comprehension of the practical realities of frequent eyewitness misidentifications.

Marilyn Kelly
Michael F. Cavanagh