PEOPLE v HAROLD WILLIAMS

1. SEARCHES AND SEIZURES—CONSTITUTIONAL LAW—WARRANT RE-
   QUIREMENT.

   A search and seizure without a warrant is unreasonable per se
   and violates the state and Federal Constitutions, unless the
   prosecution satisfies its burden of showing that the search is
   within one of the recognized exceptions to the warrant require-
   ment (US Const, Am IV; Const 1963, art 1, § 11).

2. SEARCHES AND SEIZURES—CONSTITUTIONAL LAW—EXPECTATION OF
   PRIVACY.

   The forceful seizure of a person's wallet and examination of its
   contents constitutes a search in the constitutional sense be-
   cause it interferes with the person's reasonable expectation of
   privacy.

3. SEARCHES AND SEIZURES—PLAIN VIEW DOCTRINE.

   Seizure of objects which are within the plain view of a police
   officer may be justified where it is immediately apparent that
   he has evidence of a crime before him.

4. SEARCHES AND SEIZURES—STOP AND FRISK—REASONABLE SUSPICION.

   A police officer may make an investigatory stop where he can
   point to specific and articulable facts reasonably warranting
   the stop, and the officer may conduct a limited pat-down of the
   person's outer clothing to discover weapons where the officer
   has reason to believe the individual is armed and dangerous;
   however, the police are not authorized to stop an individual
   where there is no reasonable suspicion that a crime already has
   been or is about to be committed.

5. SEARCHES AND SEIZURES—ARREST—PROBABLE CAUSE.

   A police officer may arrest and search an individual, without a

REFERENCES FOR POINTS IN HEADNOTES
[1] 68 Am Jur 2d, Searches and Seizures § 60 *et seq.*
[2] 68 Am Jur 2d, Searches and Seizures §§ 2, 4.
[3] 68 Am Jur 2d, Searches and Seizures § 23.
[4] 68 Am Jur 2d, Searches and Seizures §§ 33, 103.
[5, 6] 68 Am Jur 2d, Searches and Seizures § 41 *et seq.*

warrant, only when the officer has probable cause to believe the individual has committed an offense.

6. SEARCHES AND SEIZURES—CONSTITUTIONAL LAW—SEIZURE OF WALLET.

The forceful seizure of a defendant's wallet and examination of its contents by a police officer was unconstitutional where the officer did not have a warrant, the search was not incident to an arrest, the facts and circumstances known to the officer did not establish probable cause for an arrest, evidence of known criminal behavior was not in plain view, and the seizure cannot be justified as pursuant to a protective pre-arrest search; therefore, denial of defendant's motion to suppress the evidence discovered by the police officer, in a trial for retaining a credit card without the consent of the cardholder, was error (MCLA 750.157[n]).

Appeal from Oakland, John N. O'Brien, J. Submitted June 2, 1975, at Lansing. (Docket No. 21832.) Decided August 14, 1975.

Harold P. Williams was charged with retaining a credit card without the consent of the cardholder. Defendant's motion to suppress evidence and quash the information was denied. Defendant appeals by leave granted. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Thomas S. Richards,* Assistant Prosecuting Attorney, for the people.

*Bell & Brown, P. C.* (by *John E. McSorley),* for defendant.

Before: BASHARA, P. J., and J. H. GILLIS and M. F. CAVANAGH, JJ.

M. F. CAVANAGH, J. The defendant brings this interlocutory appeal from the trial court's denial

of the defendant's motion to suppress evidence and quash the information. The charge pending against the defendant is the offense of retaining a credit card without the consent of the cardholder. MCLA 750.157(n); MSA 28.354(14).

During the early evening of March 3, 1974, the manager of the Embassy Motel in Oak Park reported to the police that there were three "suspicious" men in the motel parking lot. When police arrived, they were directed to the defendant who was seated alone in an automobile parked in the lot. The car's motor was not running, and the lights were off. The officers approached the automobile and asked the defendant for some identification. The defendant stepped out of the car, pulled a wallet out of his rear pocket, and although stating he had no identification, gave one of the officers a business card. The officer then asked him to check his wallet again for some other identification. The defendant thumbed through the wallet again and said he had only the business card. As the defendant was looking through his wallet, one of the officers, using his flashlight, observed the top part of an operator's license (part of the initial and number of the license code).

The officer at that point took the wallet from the defendant's possession and discovered that the license was in the name of another person. When the defendant failed to explain where he had obtained the license, the officer proceeded to examine the wallet further and discovered several credit cards belonging to other persons. When the officer received information that the cards had been stolen, the defendant was placed under arrest.

The defendant filed a pretrial motion to suppress the evidence as fruit of an unconstitutional search

and seizure. The trial court denied the motion, and we granted leave to appeal in order to consider the question.

A warrantless search and seizure is unreasonable per se and violates the Fourth Amendment of the United States Constitution and art 1, § 11 of the Michigan Constitution unless the prosecution satisfies its burden that the search is within one of the recognized exceptions to the warrant requirement. *People v Reed,* 393 Mich 342, 362; 224 NW2d 867 (1975). It should be clear that the inherently forceful seizing of a person's wallet and examination of its contents constitutes a search in the constitutional sense since this interferes with the person's reasonable expectation of privacy. *Katz v United States,* 389 US 347; 88 S Ct 507; 19 L Ed 2d 576 (1967). We are convinced that the prosecutor's burden has not been satisfied in this case and that the search violated the state and Federal Constitutions.

This search cannot be justified as incident to an arrest since none had yet taken place. The facts and circumstances known to the officer could not establish probable cause for a lawful arrest. See *People v Burrill,* 391 Mich 124, 132; 214 NW2d 823 (1974). Mere suspicion of an individual, which is the most the officers could have had in this case, cannot justify an arrest. *Wong Sun v United States,* 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963).

Likewise, the search cannot be justified under the plain view doctrine. *Cf. People v Whalen,* 390 Mich 672, 677–678; 213 NW2d 116 (1973). The use of this exception is legitimate where it is immediately apparent to the police that they have evidence of a crime before them. *Coolidge v New Hampshire,* 403 US 443, 466; 91 S Ct 2022; 29 L

Ed 2d 564 (1971). At the time the police officer observed the top part of the driver's license in the defendant's wallet, there was clearly no nexus between the item and any known criminal behavior. *Warden v Hayden,* 387 US 294; 87 S Ct 1642; 18 L Ed 2d 782 (1967).

The only other conceivable exception which might apply in the warrantless seizure of the defendant's wallet is the stop and frisk doctrine established by *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). *Terry* authorizes an investigatory stop where a police officer can point to specific and articulable facts reasonably warranting the stop. *Id.* at 21. Further, where the officer has reason to believe that he is dealing with an armed and dangerous individual, the officer is justified in conducting a limited pat-down of the person's outer clothing to discover weapons. *Id.* at 27. Assuming the officer's initial stop and questioning was proper in the present case,[1] it is clear that the seizure of the defendant's wallet cannot be justified as a protective pre-arrest search since the purpose of the search was not to seize a weapon. See *Sibron v New York,* 392 US 40; 88 S Ct 1889; 20 L Ed 2d 917 (1968). Hence, the search cannot be justified as a frisk; and, since no exception to the warrant requirement has been demonstrated as being applicable, the trial court erred in denying the suppression motion.

This case highlights the difficult situation confronting a police officer when his investigation has

---

[1] The police are not authorized to stop an individual where there is no reasonable suspicion that a crime already has been, or is about to be, committed. *See United States v Nicholas,* 448 F2d 622 (CA 8, 1971), and *United States v Davis,* 459 F2d 458 (CA 9, 1972). A stop is, however, authorized where a reasonable suspicion exists. *People v Hutton,* 50 Mich App 351; 213 NW2d 320 (1973). *People v Jeffries,* 39 Mich App 506; 197 NW2d 903 (1972). *But see People v Parisi,* 393 Mich 31; 222 NW2d 757 (1974).

failed to resolve suspicions concerning an individual who has been temporarily detained.[2] Even though there is no probable cause to believe an individual has committed a crime, a police officer may, under circumstances warranting a reasonable suspicion, approach an individual in an appropriate manner for the purpose of investigating possible criminal behavior. *People v LaGrange,* 40 Mich App 342, 348; 198 NW2d 736 (1972). Thereafter, the officer's course of action depends entirely on what is reasonable in the circumstances. The officer must bear in mind, however, that at this stage in the investigation a search—except for a protective frisk or a search with the individual's voluntary consent—must be based on probable cause to believe an offense has been committed. See *People v 7th District Judge,* 55 Mich App 471; 222 NW2d 778 (1974).

Several cases have recognized an officer's authority to *request* that the stopped individual produce identification and/or explain his purpose for being in the area. *People v Rivers,* 42 Mich App 561; 202 NW2d 498 (1972). See also *United States v Hunter,* 471 F2d 6 (CA 9, 1972). Further, in most cases it would be reasonable to request that the person give a satisfactory explanation of the suspicious circumstances. And it may be reasonable to require the individual to accompany the officer a short distance for the purpose of verifying the individual's explanation. *People v Rivers, supra.* However, *Rivers* realized a line must be drawn and quoted from an American Bar Foundation study which distinguished between field interrogation and arrest as follows:

---

[2] On this subject, *see generally,* Israel, *Legislative Regulation of Searches and Seizures: The Michigan Proposals,* 73 Mich L Rev 221 (1974).

" 'There are situations, however, in which the field interrogation produces no clear indication of either guilt or innocence. The suspect may refuse to answer, and then the officer is confronted with the difficult question whether suspicious circumstances plus a refusal to answer constitute adequate grounds for arrest or whether he may use a threat of arrest in order to induce cooperation.' " 42 Mich App 561, 566.

Briefly stated, there comes a time after a temporary detention when the officer must either arrest the stopped individual or allow him to go free. See *United States v Luckett,* 484 F2d 89 (CA 9, 1973). An arrest can occur only when the facts satisfy the officer that he has probable cause to believe the individual has committed an offense. Without probable cause, even though the investigation has proved inconclusive, the officer must then disengage the individual from official confrontation. See *Young v State,* 339 A2d 723 (Del, 1975), and *Coleman v United States,* 337 A2d 767 (DC Ct App, 1975).

The trial court's denial of defendant's motion to suppress evidence is reversed. The case is remanded for further proceedings consistent with this opinion.