PEOPLE v DIXON

Docket No. 77-4636. Submitted May 3, 1978, at Grand Rapids.—Decided August 21, 1978. Leave to appeal applied for.

Dennis J. Dixon was convicted of armed robbery in the Kalamazoo Circuit Court, Raymond W. Fox, J. Defendant appeals claiming errors in the admission of evidence obtained as a direct result of an alleged illegal stop and detention and in the use of an identification procedure whereby the defendant was taken to the complainant's home for immediate identification after his arrest. *Held:*

The original stop of defendant by the police officers was justified, although there was not probable cause for arrest, since the officers could point to articulable facts which warranted such an intrusion. The detention of defendant for 20 minutes was not justified and was completely unrelated to the initial interference by the officers. Therefore, the evidence obtained as a result of the illegal detention should have been suppressed. A suspect is entitled to have counsel present whenever he is physically confronted by a witness asked to identify him except when the police apprehend the suspect within minutes after the crime and return him to the scene of the crime for identification. However, as here, when there is more than a mere suspicion that the person in custody is wanted for the crime, he cannot be returned to the scene of the crime but

REFERENCES FOR POINTS IN HEADNOTES

[1–4, 7, 8] 5 Am Jur 2d, Arrest §§ 1, 44, 45, 48.

What constitutes probable cause for arrest—Supreme Court cases. 28 L Ed 2d 978.

[2–4, 7, 8] 68 Am Jur 2d, Searches and Seizures §§ 33, 34, 58.

[5] 29 Am Jur 2d, Evidence §§ 415, 416.

[6, 9] 21 Am Jur 2d, Criminal Law §§ 313, 314.

Accused's right to counsel under the Federal Constitution. 18 L Ed 2d 1420.

Validity, under Federal Constitution, of police lineup or showup procedures—Supreme Court cases. 34 L Ed 2d 839.

Accused's right to assistance of counsel at or prior to arraignment. 5 ALR3d 1269.

[7] 68 Am Jur 2d, Searches and Seizures § 44.

must be taken to the police station for a line-up at which counsel is present.

Reversed.

BASHARA, J., dissented, and would hold that the defendant was not illegally detained and, therefore, the evidence obtained as a result of the detention should not be excluded. A short detention of a criminal suspect can rightfully be considered an extension of a police officer's investigation of the suspicious circumstances which bring the suspect to the officer's attention. The procedure whereby the defendant was returned to the scene of the crime for immediate identification did not deny him his right to counsel. Such a procedure has been sanctioned by the Michigan Supreme Court in a case decided subsequent to their holding that such a procedure should not be used where there is more than a mere suspicion that the person in custody is wanted for the crime.

OPINION OF THE COURT

1. CRIMINAL LAW—POLICE—INVESTIGATIONS—ARREST—PROBABLE CAUSE.

A police officer may, in appropriate circumstances and in an appropriate manner, approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest.

2. CRIMINAL LAW—POLICE—INVESTIGATIVE STOPS—CRIMINAL ACTIVITIES—FACTS—INFERENCES.

A police officer may stop persons when he has observed unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot; in justifying such intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.

3. CRIMINAL LAW—POLICE—INVESTIGATIVE STOPS—JUSTIFICATIONS—SCOPE—POWER TO DETAIN.

An investigative stop must be justified at its inception and must be reasonably related in scope to the circumstances which justified the interference in the first place; the scope of the police power to detain must be related to the justification for the stop at its inception, not to an after-found justification.

4. CRIMINAL LAW—POLICE—ARREST—TEMPORARY DETENTIONS—PROBABLE CAUSE—OFFICIAL CONFRONTATIONS.

An arrest may occur after the temporary detention of an individ-

ual only when the facts satisfy the police officer that he has probable cause to believe the individual has committed an offense; without such probable cause, even though the investigation has proved inconclusive, the officer must then disengage the individual from official confrontation.

5. CRIMINAL LAW—EVIDENCE—POLICE—ILLEGAL DETENTIONS—SUPPRESSION OF EVIDENCE.

Evidence obtained by police officers as a result of the illegal detention of a criminal defendant should be suppressed at the defendant's trial.

6. CRIMINAL LAW—RIGHT TO COUNSEL—IDENTIFICATION BY WITNESS—EXCEPTION TO RULE—MERE SUSPICIONS—LINE-UPS.

A suspect is entitled to have counsel present whenever he is physically confronted by a witness asked to identify him; an exception to this rule has been developed, in order to help the police ascertain whom to take into custody, whereby an attorney is not required if the police apprehend a suspect within minutes after a crime and return him to the scene of the crime for identification; however, such exception does not apply when the police officer has more than a mere suspicion that the person in custody is wanted for the crime, in which case the officer cannot return the suspect to the scene of the crime but must take the suspect to the police station and have a line-up at which counsel is present.

DISSENT BY BASHARA, J.

7. CRIMINAL LAW—POLICE—PROBABLE CAUSE—REASONABLENESS—CONSTITUTIONAL LAW—FOURTH AMENDMENT.

*Police are not required to allow a crime to occur or a criminal to escape because the level of probable cause does not meet the Fourth Amendment mandates; it may be the essence of good police work to adopt an intermediate response; the main inquiry necessary under the Fourth Amendment is the reasonableness of the governmental action in light of all the circumstances (US Const, Am IV).*

8. CRIMINAL LAW—DETENTION OF SUSPECTS—POLICE—INVESTIGATIONS—FUNDAMENTAL POLICE FUNCTIONS.

*A short detention of a criminal suspect to allow a police officer to investigate the suspicious circumstances which bring the suspect to the officer's attention can rightfully be considered a legitimate extension of the officer's investigation, which is a fundamental police function.*

.

9. CRIMINAL LAW—APPEAL AND ERROR—RIGHT TO COUNSEL—IDENTIFI-
CATION BY WITNESSES—PRESENCE OF COUNSEL—CONSTITUTIONAL
LAW—SIXTH AMENDMENT.

*A criminal defendant was not denied his Sixth Amendment right
to counsel when he was apprehended by the police minutes
after a crime and returned to the scene of the crime for
identification without the presence of counsel; such a procedure
has been sanctioned by the Supreme Court in a decision subse-
quent to one providing the right to counsel where the officer
has more than a mere suspicion that the person in custody is
wanted for the crime (US Const, Am VI).*

*Robert L. Hencken,* for defendant.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *James J. Gregart,*
Prosecuting Attorney, *Stephen M. Wheeler,* Chief,
Appellate Division, and *Kenneth Kobayashi,* As-
sistant Prosecuting Attorney, for the people.

Before: D. E. HOLBROOK, JR., P. J., and BASHARA
and R. M. MAHER, JJ.

PER CURIAM. Found guilty, on August 18, 1976,
of armed robbery in a jury trial, defendant was
sentenced to a term of 8 to 20 years imprisonment.

Two individuals, later identified as defendant
and Curtis Weekly, were spotted at 5:08 a.m. by
two police officers. They were seen running from a
McDonald's parking lot, across the street, and into
a Sunoco gas station. One of the officers who
spotted the individuals running testified that since
there had been a past history of break-ins in the
area during the early morning hours, police suspi-
cions were aroused. The officers stopped the indi-
viduals to investigate. They conducted a pat-down
search, which produced nothing, and placed them
in the patrol car. The other officer then testified
that they drove back into the McDonald's parking

lot and began to check the stores in the area to be sure no break-in had occurred.

About 15 minutes later, at 5:25 a.m., the officers received a message that one Curtis Weekly and another person were involved in an armed robbery. Only Weekly disclosed his identity to the officers. At this point defendant and Weekly were placed under arrest.

After the arrest, defendant was searched and allegedly stolen money was seized from his person. One of the officers retraced the defendant's footprints and found a knife buried in the snow. Defendant and Weekly were placed in separate cars and were taken back to the place where the victim was reporting the crime.

The victim, Arzell Givhan, reported that, after an early morning gambling party, at which he had modest winnings, he left the scene of the party and was approached by defendant and Weekly, who had also been at the party and who asked for a ride to the north side of town. Givhan stated he refused. As he began to walk to his car, the victim testified, Weekly and defendant caught up to him. Weekly pulled a knife[1] and held it to Givhan's throat, while defendant went through the victim's pockets and wallet. When the men released him, they fled. Givhan eventually called police.

When Weekly and the defendant were returned to the scene, Givhan was led to the first vehicle containing Weekly and identified him. Givhan was then led to the second car containing defendant where he stated that the defendant was "the other one". Defendant and Weekly were then taken to the police station.

---

[1] The victim Givhan stated that he saw the knife and that is was a pocketknife with a 6-inch blade. (On cross-examination, Givhan said the blade was 3 inches long.) The knife found by the police in the snow was not a fold-up pocketknife.

Defendant alleges a number of errors at the trial court level. We address two of his claims. On appeal, defendant contends that the stop and detention were illegal and that the evidence which was found as a direct result of the illegal stop and detention should, therefore, be suppressed.

A police officer may "in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest". *Terry v Ohio,* 392 US 1, 22; 88 S Ct 1868; 20 L Ed 2d 889 (1968). It is not unlawful for a police officer to stop persons when he has observed "unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot".· *People v Whalen,* 390 Mich 672, 680; 213 NW2d 116 (1973). In justifying the intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. *Terry v Ohio, supra,* at 21.

In the instant case, both the initial stop by the police officers and the subsequent 20 minute detention of defendant must be tested by the standards of *Terry* and its progeny. The original stop of defendant by the police officers appears to have been justified under the *Terry v Ohio* rationale. Though there was no probable cause for arrest, the officers could point to articulable facts which warranted the intrusion. Defendant was found in the very early morning hours running in an area which had recently been the scene of many early morning break-ins. An investigative stop to ask defendant for identification and to inquire into the nature of his business was not uncalled-for.

However, the detention of defendant and Curtis

Weekly in the squad car for 20 minutes cannot be justified under *Terry v Ohio*. An investigative stop must be justified at its inception and must be reasonably related in scope to the circumstances which justified the interference in the first place. Here the justification for the stop was defendant's running in the early morning in an area where there had been a recent rash of break-ins. But defendant was further detained while one of the officers surveyed the surrounding area to make sure no criminal activity was afoot. This detention was wrongful; there was no justification for it as it was completely unrelated to the initial interference by the officers.

*Terry v Ohio* permits only a brief stop of a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information. Detention for something more cannot be justified under *Terry v Ohio, supra. Adams v Williams,* 407 US 143; 92 S Ct 1921; 32 L Ed 2d 612 (1972). Under *Terry,* the officer making the stop must be suspicious at the time the stop is made that criminal activity is afoot. Although the police in this case were somewhat suspicious when defendant was first stopped, they had no further authority to detain defendant afterward while one of the officers went to check to see if criminal activity were afoot. The scope of the police power to detain must be related to the justification for the stop at its inception—not to an after-found justification.

Here the police merely saw two men running in the early morning, a not uncommon sight in our times. Nor did the police proffer any facts to justify the intrusion upon defendant's freedom. Nothing elicited from defendant or his companion would give any cause to increase police suspicions.

They, in fact, failed to ask for an explanation of defendant's activities as suggested in *People v Harold Williams,* 63 Mich App 398; 234 NW2d 541 (1975). Therefore, the police, in detaining defendant, could not have been attempting to verify the explanation—a practice apparently approved in *People v Harold Williams, supra,* and *People v Rivers,* 42 Mich App 561; 202 NW2d 498 (1972).

Our Court has confronted before the "difficult situation confronting a police officer when his investigation has failed to resolve suspicions concerning an individual who has been temporarily detained". In *People v Harold Williams, supra,* the Court said:

"Briefly stated, there comes a time after a temporary detention when the officer must either arrest the stopped individual or allow him to go free. See *United States v Luckett,* 484 F2d 89 (CA 9, 1973). An arrest can occur only when the facts satisfy the officer that he has probable cause to believe the individual has committed an offense. Without probable cause, even though the investigation has proved inconclusive, the officer must then disengage the individual from official confrontation. See *Young v State,* 339 A2d 723 (Del, 1975), and *Coleman v United States,* 337 A2d 767 (DC Ct App, 1975)." 63 Mich App at 404.

As *Williams* said, a line must be drawn. 63 Mich App at 403. In this case the officers crossed that line and because of their transgression, they discovered both the money and the knife. Had defendant been only stopped instead of illegally detained, the discovery would not have been made. Since the evidence was the product of the illegal detention, it should have been suppressed.

Defendant also complains that he was denied his Sixth Amendment right to counsel and his Fourteenth Amendment right to due process when,

after his arrest, he was returned to the complainant's home for immediate identification.

A suspect is entitled to have counsel present whenever he is physically confronted by a witness asked to identify him. *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974). However, as our Supreme Court has noted, an exception to this rule has developed: an attorney is not required if the police apprehend a suspect within minutes after the crime and return him to the scene of the crime for identification. *People v Anderson,* 389 Mich 155, 187, n 23; 205 NW2d 461 (1973). *Anderson* cites *Russell v United States,* 133 US App DC 77; 408 F2d 1280 (1969), for the justification for the absence of counsel at an identification procedure— though the assumptions upon which *Russell* is premised have been assailed. See Grano, Kirby, Biggers, and Ash: *Do Any Constitutional Safeguards Remain Against the Danger of Convicting the Innocent,* 72 Mich L Rev 717, 733–738 (1974).

Defendant argues that the exception briefly delineated in *Anderson* should not apply in a case where the police clearly suspect that the defendant has committed the crime; that is, where they do not have to ascertain whom to take into custody. Our Supreme Court, while noting *Russell* in *Anderson,* appears to have in part rejected the reasoning espoused in *Russell* and to have adopted the reasoning urged upon us by defendant.

In *People v Patskan,* 387 Mich 701; 199 NW2d 458 (1972), three men attempted to rob a bar-restaurant. One of the men placed a gun in the ribs of the complainant who was an employee and helped search him. A silent alarm had alerted the police and when they arrived, the robbers fled. One person was fatally shot, another wounded and a third, the person who had held the employee at

gunpoint, ran into a nearby field. An officer pursued and found the defendant hiding in the field and returned him to the bar where the other officers identified him.

In reversing defendant's conviction, the Supreme Court held that defendant had been denied the right to counsel when he was returned to the scene of the crime and identified by the police officers.

"Finally, defendant contends that his right of due process of law and his right to assistance of counsel were violated when he was returned to the scene of the alleged holdup and identified by the other officers. The right of counsel at a confrontation between an accused and his accuser was recognized by the United States Supreme Court in *United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967). *Wade* was decided on June 12, 1967, but was silent on the question of retroactivity. *Stovall v Denno,* 388 US 293; 87 S Ct 1967; 18 L Ed 2d 1199 (1967), succinctly held that *Wade* was not made retroactive. The instant holdup occurred on July 14, 1967, and, thus, defendant Patskan is entitled to the benefits provided by *Wade.*

"Thus, on retrial, the trial court should hold a hearing to determine whether the in-court identification of defendant by the police officers was arrived. at independent of the initial confrontation. If such in-court identification was not independent, evidence of the indentification of the defendant should be excluded on retrial." (Footnote omitted.) 387 Mich at 715.

The police in *Patskan* arrived during the perpetration of a robbery. It was evident that the men who were fleeing were participants in the robbery. The clear implication in the Supreme Court decision is that when a police officer has more than a mere suspicion that the person in custody is wanted for the crime, the officer cannot return the

suspect to the scene of the crime but must take him to the police station and have a line-up at which counsel is present.

If, as *People v Russell* asserts, one of the purposes of an at-the-scene identification is to expedite the release of innocent suspects, that purpose fails when the police have substantial evidence suggesting that the person in custody is not innocent: there are, in the circumstances, no innocent suspects to be released.

Here the police had a significant amount of information indicating defendant's involvement in the robbery. Defendant and his companion were more than potential suspects whose innocence was in doubt. There was no need for the police to ascertain whom to take into custody. There was, therefore, no need for the at-the-scene identification without counsel. Defendant should have been taken to the station and provided a line-up and counsel.[2]

Defendant is granted a new trial at which the evidence seized as the result of the illegal detention must be suppressed. Evidence of the at-the-scene identification must be excluded and any in-court identification must be shown to have an independent basis. In order to determine if an independent basis exists, the trial court should consider those factors set forth in *People v Kachar,* 400 Mich 78; 252 NW2d 807 (1977).[3]

---

[2] We note that the exception to the rule of right to counsel at a pretrial identification is not affected by our decision when those on-the-scene encounters follow the alleged crime within minutes and are necessary in order for police to know whom they should arrest. *See People v Foster,* 51 Mich App 213; 214 NW2d 723 (1974), *People v Curtis Williams,* 57 Mich App 612; 226 NW2d 584 (1975).

[3] The following are the factors listed in *Kachar* which the court should use in determining whether an independent basis exists:

1. Prior relationship with or knowledge of the defendant.

2. The opportunity to observe the offense. This includes such factors as length of time of the observation, lighting, noise or other factor affecting sensory perception and proximity to the alleged criminal act.

Bashara, J. *(dissenting)*. I respectfully dissent. This writer does not find two men running at 5 a.m. to be a common sight, especially in an area of many recent early morning break-ins. Even the majority agrees that the police were justified in stopping the two individuals.

In *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), the United States Supreme Court indicated their approval of restrained and legitimate investigative conduct. As pointed out in *Adams v Williams*, 407 US 143; 92 S Ct 1921; 32 L Ed 2d 612 (1972), the police are not required to allow a crime to occur or a criminal to escape because the level of probable cause does not meet the Fourth Amendment mandates. "On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response". *Adams* at 145.

From the time defendants were first spotted running to the time of the message concerning the armed robbery only 17 minutes elapsed. Actual detention time was undoubtedly less.

In view of the suspicious circumstances, the short time of detention can rightfully be considered a legitimate extension of the officers' investigation, which is a fundamental police function. *People v Rivers*, 42 Mich App 561, 564; 202 NW2d 498 (1972), *United States v Lee*, 271 A2d 566, 567–568 (DC, 1970).

---

3. Length of time between the offense and the disputed identification.

4. Accuracy or discrepancies in the pre-lineup or showup description and defendant's actual description.

5. Any previous proper identification or failure to identify the defendant.

6. Any identification prior to lineup or showup of another person as defendant.

7. The nature of the alleged offense and the physical and psychological state of the victim.

8. Any idiosyncratic or special features of defendant.

The main inquiry necessary under the Fourth Amendment is the reasonableness of the governmental action in light of all the circumstances. *Terry, supra, People v Harold Williams,* 63 Mich App 398, 403; 234 NW2d 541 (1975).

Considering the particular facts of this case, I cannot find that the defendant was illegally detained so as to necessitate exclusion from evidence of the knife and stolen money.

I must also disagree with the finding that defendant was denied his Sixth Amendment right to counsel by being returned to the scene of the crime for immediate identification. This procedure has been sanctioned by our Supreme Court in *People v Anderson,* 389 Mich 155; 205 NW2d 461 (1973). The case of *People v Patskan,* 387 Mich 701; 199 NW2d 458 (1972), on which the majority relies, was decided prior to the *Anderson* case.

I would affirm.