PEOPLE v STEINER

Docket No. 69648. Submitted January 12, 1984, at Grand Rapids.—
Decided April 6, 1984.

Jerry Steiner was convicted of armed robbery, Calhoun Circuit
Court, James C. Kingsley, J. At the preliminary hearing defen-
dant was seated in the audience of the courtroom rather than
at the defense table. None of the witnesses to the robbery were
initially able to identify defendant but one of them identified
him after the prosecutor was allowed to reopen the case, after
which defendant was bound over for trial on the armed robbery
charge. The witnesses were sequestered during the preliminary
examination, but one of them had spoken to an outsider.
Defendant appealed, alleging that the trial court erred in
denying a motion to suppress evidence seized from a vehicle
following his arrest, that the in-court identification was tainted
by the violation of the sequestration order and the initial
failure of the witness to identify him, and that a mistrial
should have been granted because the arresting officers testified
that they had come into contact with defendant in their capac-
ity as police officers prior to the crime for which defendant was
on trial. *Held:*

1. The evidence supports a finding that the officers had
probable cause to arrest the defendant. Therefore, the subse-
quent search of the vehicle in which defendant was riding
when arrested, pursuant to a search warrant, was not improper
and the evidence seized was properly admitted.

2. The trial court properly considered the identification testi-
mony of the witness in light of the requisite criteria to be
applied where there is a question of an improper pretrial

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Arrest §§ 23-25.

[2] 29 Am Jur 2d, Evidence § 371 *et seq.*

Validity, under Federal Constitution, of police lineup or showup
procedures—Supreme Court cases. 34 L Ed 2d 839.

Admissibility of evidence of showup identification as affected by
allegedly suggestive showup procedures. 39 ALR3d 791.

Admissibility of evidence of lineup identification as affected by
allegedly suggestive lineup procedures. 39 ALR3d 487.

identification procedure. The trial court did not abuse its discretion in finding that there was an independent basis for the in-court identification.

3. The police officers' testimony did not indicate that the defendant had been involved in prior criminal activity, and the trial court properly instructed the jury that they were not to infer such prior criminal activity from the testimony. The motion for mistrial was properly denied.

Affirmed.

1. ARREST — ARREST WITHOUT WARRANT — PROBABLE CAUSE.

The constitutional validity of an arrest made without a warrant turns upon whether the officers had probable cause to make the arrest; that is, whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense.

2. CRIMINAL LAW — WITNESSES — IDENTIFICATION — INDEPENDENT BASIS.

Eight factors to be used in determining whether an independent basis exists for an in-court identification of a defendant by a witness where the identification is alleged to be tainted by a pretrial identification procedure are: (1) prior relationship with or knowledge of the defendant; (2) opportunity to observe the offense; (3) length of time between the offense and the disputed identification; (4) accuracy of prior descriptions and actual description; (5) previous identification or failure to identify defendant; (6) previous identification of another person as defendant; (7) the witness's emotional condition at time of alleged crime; and (8) any idiosyncratic or special features of defendant.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, *Conrad J. Sindt*, Prosecuting Attorney, and *Richard M. C. Adams*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Peter Jon Van Hoek*), for defendant on appeal.

Before: MacKENZIE, P.J., and BEASLEY and K. B. GLASER,* JJ.

PER CURIAM. Defendant, Jerry Steiner, was convicted by a jury of two counts of armed robbery, MCL 750.529; MSA 28.797. He was sentenced to serve not less than 32 years nor more than 70 years in prison, to be served concurrently with previous sentences given him by the court. He appeals as of right.

On March 13, 1981, a robbery occurred at the Battle Creek Professional Bureau, a collection agency. Defendant and his codefendant, Earl Bouyer, were charged with commission of the crime. Four witnesses who were present in the business during the robbery, Shari Wright, Violette Poole, Randolph Poole and Norton Shaver, testified at the preliminary hearing. The witnesses were sequestered and instructed not to discuss their testimony with anyone.

Pursuant to a motion by the defense, defendants were permitted to sit in the audience section of the courtroom rather than at the table with counsel. A defense motion for a line-up was denied. During their testimony, none of the four witnesses initially identified defendant Steiner as the second man involved in the robbery. Mrs. Wright identified Earl Bouyer as the first man who had entered her office during the robbery, carrying a briefcase, but was initially unable to identify the second man.

The fifth prosecution witness, Detective Duane Ross of the Battle Creek police, testified that he and his partner were in an unmarked police car outside the building and heard someone yell "robbery, call the police", and then "there they go".

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

Detective Ross identified both defendants as the two men he and his partner followed as they ran out of the building where the bureau was located. Defendants were arrested after entering a van, which was parked several blocks from the building, and attempting to drive away.

Detective Ross acknowledged that, while he had known Steiner before this incident, he did not recognize defendant prior to the arrest. The two men were arrested, and Detective Ross testified that he remained at the scene with the van until it was towed to the station and a warrant was obtained for the search of the interior of the van. Following this testimony, the court bound over Bouyer on some of the charged counts, but withheld ruling on the armed robbery counts charged against defendant, contingent on the prosecution's offer of further testimony.

Over objection, the prosecutor was permitted to reopen the case and recall Mrs. Wright, who then identified Steiner as the second man who had participated in the robbery, stating that she had not been able to get a good look at defendant where he was seated in the courtroom when she testified earlier. She testified that she had not spoken to anyone concerning her identification of the robbers since her earlier testimony.

Following her testimony, defendant was bound over for trial on the armed robbery counts. However, the defense was then permitted to reopen the case and called the court bailiff, who testified that he had been told by an attorney, Mr. Pixley, that Pixley had gone into the witness room where Mrs. Wright was sequestered with the other witnesses following her testimony. However, the court ruled that the bailiff could not relate Pixley's statements to him and denied the defense motion to hold the bindover in abeyance pending testimony by Pixley.

Following evidentiary hearings on motions to suppress the in-court identification of defendant Steiner and to suppress evidence, defendant was brought to trial and found guilty as charged.

On appeal, defendant raises three issues. He first contends that it was error to deny his motion to suppress evidence seized in the search of the van following his arrest. Defendant contends that the police lacked probable cause to arrest him without a warrant and, therefore, the illegality of his arrest tainted the evidence seized during the subsequent search of his van. We disagree and believe that the testimony of the police officers at the evidentiary hearing, held January 27, 1982, supports a finding of probable cause for the arrest.

The probable cause required for a warrantless arrest to be constitutionally valid has been defined by the United States Supreme Court in *Beck v Ohio*[1] as follows:

"Whether that arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it— whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense."

Detective Ross and Sergeant Wiggins testified that they pursued the two men, both apparently carrying something, who ran from the front of the building where the bureau was located, after hearing someone from the upper level of the building yell "robbery" and "police", and that someone yelled "there they go". They testified that they lost

[1] 379 US 89, 91; 85 S Ct 223; 13 L Ed 2d 142 (1964); see, also, *People v Harper*, 365 Mich 494, 501; 113 NW2d 808 (1962).

sight of the men only briefly and pursued them to a van, which rammed their unmarked police car when they attempted to block its exit.

Contrary to defendant's argument, this is not a case like *People v Dixon*,[2] where the police unlawfully detained two men whom they observed running through a high crime area in the early morning hours while they investigated whether any crime had occurred. The police possessed sufficient information in defendant's case to make the arrest for the robbery and, therefore, the subsequent seizure of evidence from the van pursuant to a warrant was not tainted.

Defendant's second contention presents a more difficult question. Defendant states that the in-court identification of him by Shari Wright was tainted by violation of the sequestration order and her failure to identify defendant during her first time on the stand. The trial court abused its discretion, according to defendant, in denying the motion to suppress the identification. Upon a careful reading of the record, however, we find no abuse of discretion.

The testimony at the hearing indicates that the violation of the sequestration order was unrelated to the later identification of defendant by Mrs. Wright. Pixley, the attorney who entered the witness room, testified that he had entered the room to greet his friend, Norman Shaver, when he saw him inside. When he asked Shaver why he was there, Shaver, who had just testified, related his frustration at being unable to make an identification of the robbers. Pixley testified that he did not remain for more than a few minutes, nor did he talk to any of the others in the room concerning

---

[2] 85 Mich App 271; 271 NW2d 196 (1978), *lv den* 406 Mich 906 (1979).

the case. Upon leaving the room, Pixley encountered the bailiff who reprimanded him and told him there was a sequestration order in effect. Pixley testified that he reported the substance of his conversation to the bailiff, who testified about the event at both the preliminary hearing and the motion hearing.

In deciding the motion, the trial court specifically considered the eight criteria set forth in *People v Kachar*,[3] to determine that there was an independent basis for the in-court identification of defendant Steiner by Shari Wright, separate and apart from any pre-trial identification procedures. Those factors are:

"1. Prior relationship with or knowledge of the defendant.

"2. The opportunity to observe the offense. This includes such factors as length of time of the observation, lighting, noise or other factors affecting sensory perception and proximity to the alleged criminal act.

"3. Length of time between the offense and the disputed identification. See *People v Anderson,* 389 Mich 155, 214; 205 NW2d 461 (1973), for analysis of the curve of forgetting.

"4. Accuracy or discrepancies in the pre-lineup or showup description and defendant's actual description.

"5. Any previous proper identification or failure to identify the defendant.

"6. Any identification prior to lineup or showup of another person as defendant.

"7. * * * the nature of the alleged offense and the physical and psychological state of the victim. * * *

"8. Any idiosyncratic or special feature of defendant."[4]

---

[3] 400 Mich 78; 252 NW2d 807 (1977); see, also, *People v Richmond,* 84 Mich App 178; 269 NW2d 521 (1978).

[4] *Kachar, supra,* pp 95-96.

As to the application of those factors, the *Kachar* Court instructed:

"Further, the court should refer to the actual lineup or showup to determine whether the witness's testimony that the identification was due to perceptions received at the time of the alleged offenses is credible in view of the witness's performance at, and the conduct of, the disputed lineup or showup.

"The court should attempt, in its evidentiary hearing, to examine as many factors as are applicable to a particular case. All will not be of equal weight, but it is within the trial court's discretion, keeping in mind the appropriate legal and psychological principles to determine, on balance, whether the prosecution has carried its burden of proof.

"Upon consideration of such relevant factors, the trial court must state on the record the reasons for determining whether the prosecution has established by clear and convincing evidence that the in-court identification has a sufficient independent basis to purge the taint caused by the illegal confrontation."[5]

In applying the eight criteria to the testimony of Shari Wright, the court noted the following. Mrs. Wright testified that defendant Steiner had been in the office previously on two occasions while she worked there, and that she had waited on him and called him by name. On the day of the robbery, she observed defendant Steiner come in the office door and proceed around the corner of the cabinets. She asked if she could help him and he indicated that he wished to talk with the other lady and proceeded ahead. She further testified that defendant Steiner then came and took her by the arm and placed her at her desk, that she had a total of approximately two minutes to observe the actions of the defendants, and that there was no

---

[5] *Id.,* pp 96-97.

doubt in her mind as to the accuracy of her identification.

The court also noted that the offense took place on March 13, 1981, that Shari Wright clearly identified defendant Steiner during the course of the preliminary examination on April 1, 1981, and clearly identified defendant Steiner at the evidentiary hearing on September 13, 1982. Shari Wright testified at the evidentiary hearing that she did not recognize defendant Steiner at first because she had difficulty in seeing where he was seated in the courtroom because the prosecutor and other persons obstructed her view. She indicated that she did not know if she could request anyone to move in order for her to get a better view, so she decided not to say anything. However, as she left the stand, she was able to get a better look at defendant Steiner and was then able to identify him as one of the perpetrators of the crime.

At the preliminary examination after the identification was made, the court questioned Wright:

"I must ask you this question, though, Mrs. Wright, the fact that you identify the person now, it is not due to any other conversations with anyone else to make you change your testimony?

*"Mrs. Wright:* Absolutely not."

In its findings, the court concluded that it was persuaded by the attitude and demeanor of Shari Wright that had the preliminary examination not occurred she could still identify defendant as a result of her recollection of the robbery. The court concluded further that there was nothing to establish the fact that an unnecessarily suggestive identification procedure was utilized.

We believe that, based on the evaluation of these criteria, the trial court correctly found that

there was an independent basis for Wright's in-court identification of defendant and that it did not abuse its discretion in denying defendant's motion to suppress the identification.

Defendant's third argument is that his motion for a mistrial should have been granted because the arresting officers testified they had previously come into contact with defendant in their capacity as police officers, raising an inference that defendant had a prior criminal record. Sergeant Wiggins, one of the undercover officers who had chased and arrested defendant, was questioned on redirect examination by the prosecutor as follows:

"*Q.* Did you ever, in the course of the years prior thereto, come into contact with him in such a way that he would have known of your identity as a police officer?
"*A.* Yes, sir."

Likewise, Detective Ross, the other undercover officer who had chased defendant, was examined as follows:

"*Q.* Did he, or would he have had occasion to know of you in your capacity as a police officer, prior to March 13, 1981?
"*A.* I believe so, yes."

In response to defendant's motion for a mistrial, the prosecutor stated that the reason for eliciting this testimony was to show that defendant knew both men and was aware that they were police officers at the time he was attempting to evade their pursuit. The trial judge concluded that the prosecutor's questioning did not raise an inference of criminal activity sufficient to require a mistrial

and, in addition, gave the following cautionary instruction to the jury:

"Detective Ross and Sergeant Wiggins each testified that they knew Jerry Steiner before the incident took place. You may not infer from their testimony that this prior knowledge of Mr. Steiner was as a result of any criminal activity on his part."

We disagree with defendant's contentions that the testimony prejudiced him to the extent requiring a mistrial and that the curative instruction, far from improving the situation, merely served to remind the jury of the prejudicial testimony. Contrary to defendant's assertions, this was not a situation comparable to that in *People v McCartney*,[6] where a police witness "volunteered" that the accused's fingerprint card contained his prison inmate number, or to that in *People v Wallen*,[7] where testimony that a witness had originally met the defendant in jail was held to be prejudicial beyond instructional cure. Therefore, finding that none of the three issues raised by defendant merit reversal, we affirm his conviction.

Affirmed.

[6] 46 Mich App 691; 208 NW2d 547 (1973).
[7] 47 Mich App 612; 209 NW2d 608 (1973).