**STATE of Minnesota, Respondent,**

v.

**Eddie WHITE, Appellant.**

**No. C4–90–1430.**

Court of Appeals of Minnesota.

April 16, 1991.

Review Granted July 1, 1991.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty., Donna J. Wolfson, Asst. County Atty., Minneapolis, for respondent.

John M. Stuart, State Public Defender, Lawrence W. Pry, Asst. Public Defender, St. Paul, for appellant.

Considered and decided by FORSBERG, P.J., and PARKER and AMUNDSON, JJ.

## OPINION

PARKER, Judge.

A jury found appellant Eddie White guilty of possessing more than ten grams of cocaine in violation of Minn.Stat. § 152.023, subd. 2(2) (Supp.1989). White contends his conviction must be reversed because the trial court, in the instructions, permitted the jury to infer knowing possession from the presence of cocaine in his car, and the court admitted into evidence items seized in an unconstitutional search of the car. We reverse and remand for evidentiary hearing on whether police would have discovered the evidence, inevitably, without the unconstitutional search.

## FACTS

On November 2, 1989, in north Minneapolis, White made a left turn without signaling while driving a car with no license plates. Officer Spector of the Minneapolis Police Department followed, intending to make a traffic stop, but before he could do so White had already stopped his car and started walking away.

Spector testified that he called White and ordered him to stop three times before White returned to the car. Spector asked him for identification. White said he did not have a driver's license because Illinois police had taken it, but he had a traffic citation with his name. White took a traffic citation from the car's visor and told Spector his name was Jamal Whitted, which was also the name on the ticket. He pointed to a temporary permit on the car's rear window which showed that Eddie White owned the car. He told Spector that Eddie White was his cousin.

Spector testified that he told White to sit in the back of the police car and ran an identification check on Jamal Whitted which showed that Whitted had a valid driver's license. Spector asked White his middle name and White said it was Lorenzo. Spector asked him to spell it; White answered, "L-e-n-r-e-z-o." Spector asked him to spell it again and White answered, "L-e-r-n-z-o."

Spector testified that he went to the car to find further identification. When he entered it he noticed an unzipped duffel bag on the passenger seat and a wad of money and a plastic tube containing white powder protruding from the bag. Spector returned to the police car and *told White he was under arrest for possession of narcotics.* As Spector opened the back door of the police car to retrieve his jacket from the back seat, White kicked the door and struggled to get out. Spector radioed for assistance. White managed to escape and run past several houses, but then slipped and fell. Spector ordered him to remain on the ground and held him at gunpoint until other officers arrived.

White testified that he was attempting to return the duffel bag to its owner when Spector stopped him and that he and three relatives had come from Chicago to visit his uncle in Minneapolis. While they were at his uncle's home on November 1, 1989, they met a man named Joseph Daniels and his friend, "Shane." The six men spent the evening together and all stayed in a hotel room that White and his relatives rented. Shane brought the duffel bag later found in White's car, and the bag remained unopened all evening. When they left the hotel, White dropped off Shane and then Daniels, and then he and his relatives returned to his uncle's home. White then saw Shane's duffel bag in the car so he went to return it. Several of White's relatives testified and corroborated his testimony to this point.

White testified that he had just gotten out of his car to walk up to the house where he had left Shane when Spector

559

called to him. He immediately responded. Spector asked his name and he answered "Eddie White." Spector searched him for identification. White told Spector that his driver's license had been taken in Illinois, and he showed Spector the car's registration permit. Spector saw the traffic citations for Jamal Whitted and asked White to spell Whitted's middle name. White spelled it incorrectly. Spector placed White in the police car and searched his car. When he returned he told White to get out of the car for handcuffing. Spector closed the door on White's leg, started to choke him and ordered him to lie on the ground, threatening to kill him.

When the other officers arrived, they handcuffed White and searched his car. The duffel bag on the front seat contained more than $3,000 in cash and 25 grams of cocaine. One officer asked White if the duffel bag was his and White said it was. Police also found a second duffel bag in the trunk which did not contain drugs. White testified that he meant the duffel bag in the trunk was his, not the duffel bag on the passenger seat. ·

At the *Rasmussen* hearing White moved to suppress the cocaine and currency seized from his car. The trial court denied the motion. The court instructed the jury, over white's objection:

> The presence of a controlled substance, here cocaine, in a passenger automobile permits the Jury to infer knowing possession of the controlled substance by the driver of the automobile when the controlled substance was in an automobile. You are to be clear, however, that this is only a permissible inference, which you are free to accept or reject based upon the evidence in the case. It remains the duty and the burden of the State to prove each element of the crime beyond a reasonable doubt. There is no requirement on the defendant to prove his innocence.

## ISSUES

1. Did the trial court instruction permitting the jury to infer knowing possession of narcotics from their presence in White's car violate his due process rights?

2. Is evidence discovered in a limited warrantless search for identification admissible?

3. Was the search of White's car a valid search incident to arrest?

4. Were the items seized from White's car admissible under the inevitable discovery rule?

## ANALYSIS

### I

■ "Trial courts have broad discretion in determining the propriety of a specific jury instruction." *Johnson v. State*, 421 N.W.2d 327, 330 (Minn.App.1988), *pet. for rev. denied* (Minn. May 4, 1988). This court will not reverse a conviction on the basis of an erroneous jury instruction unless consideration of the instructions as a whole reveals an abuse of discretion. *See State v. Daniels*, 361 N.W.2d 819, 831–32 (Minn.1985); *State v. Shatto*, 285 N.W.2d 492, 493 (Minn.1979).

The trial court based the instruction permitting the jury to infer possession on Minn.Stat. § 152.028, subd. 2 (Supp.1989), which provides:

> The presence of a controlled substance in a passenger automobile permits the factfinder to infer knowing possession of the controlled substance by the driver or person in control of the automobile when the controlled substance was in the automobile.

■ The statute, and the trial court's instruction, provide a permissive inference, not a presumption. *See State v. Olson*, 466 N.W.2d 44 (Minn.App. Feb. 19, 1991). The validity of an inference permitted by statute depends upon whether the factfinder's responsibility to find the ultimate facts beyond a reasonable doubt has been undermined. *County Court of Ulster. v. Allen*, 442 U.S. 140, 156–60, 99 S.Ct. 2213, 2224–26, 60 L.Ed.2d 777 (1979). A permissive inference is unconstitutional "only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference." *Id.* at 157, 99

S.Ct. at 2225, *quoted in State v. LaForge,* 347 N.W.2d 247, 252 (Minn.1984). When reviewing a permissive inference, the United States Supreme Court "has required the party challenging it to demonstrate its invalidity as applied to him." *County Court of Ulster,* 442 U.S. at 157, 99 S.Ct. at 2224.

White argues that the statutory inference in this case is irrational because he testified that the duffel bag belonged to someone else, he had not seen it unzipped, and several witnesses corroborated this testimony. White admits that he was alone in the car with the duffel bag which contained cocaine and $3,000 in cash on the passenger seat when Spector saw him driving the car. White admits that he told the police the duffel bag was his, although he testified that he meant the duffel bag in the trunk was his.

White has not demonstrated that the inference is irrational in this case; on the contrary, even if his testimony were accepted, it follows reasonably from the facts presented. The trial court properly cautioned the jury on use of the inference and the burden of proof. The trial court's instruction was not erroneous. *See Olson,* 466 N.W.2d at 48.

### II

White argues that the cocaine and cash should not have been admitted into evidence, because police found those items in an unconstitutional search of his car. This court accepts the trial court's findings of fact unless those findings are clearly erroneous, but we must independently apply fourth amendment case law to the facts so found. *See State v. Storvick,* 428 N.W.2d 55, 58 n. 1 (Minn.1988).

Spector had no warrant to search White's car, so the search was unreasonable per se unless it can be justified under a "specifically established and well-delineated exception[ ]" to the warrant requirement. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967), *quoted in State v. Hanley,* 363 N.W.2d 735, 738 (Minn.1985). The state argues that the search was legitimate as either a limited search for identification or a search inci-

dent to arrest, and even if the search were unconstitutional, the evidence was admissible because it would have been discovered, inevitably, without police misconduct.

The state cites *State v. Flynn,* 92 Wis.2d 427, 285 N.W.2d 710 (1979), in support of its argument that the limited search for identification did not violate the fourth amendment. Some states have rejected Wisconsin's approach, finding that limited searches for identification are not exempt from the warrant requirement. *E.g., People v. Williams,* 63 Mich.App. 398, 234 N.W.2d 541 (1975). There is no Minnesota authority for the proposition that a limited search for identification does not violate the fourth amendment to the United States Constitution or Article I, § 10, of the Minnesota Constitution. Spector's conduct cannot be justified as a limited search for identification, because there is no such "specifically established and well-delineated exception" to the warrant requirement in Minnesota. *Katz,* 389 U.S. at 357, 88 S.Ct. at 514.

### III

The state argues that police discovered the cash and cocaine in a valid search incident to arrest. In *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969), the United States Supreme Court held that a lawful custodial arrest justifies a contemporaneous warrantless search of the person arrested and the immediate surrounding area because of the need to remove weapons and prevent the destruction of evidence. As the Court stated in *Terry v. Ohio,* 392 U.S. 1, 19, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889 (1968), "[t]he scope of [the] search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *Quoted in Chimel,* 395 U.S. at 762, 89 S.Ct. at 2039–40. The Court applied these principles to automobile searches in *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981), holding:

> [W]hen a policeman has made a lawful custodial arrest of the occupant of an

automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.

(Footnote omitted.)

■ The evidence discovered in a search incident to arrest cannot justify the arrest. *Smith v. Ohio,* 494 U.S. 541, ——, 110 S.Ct. 1288, 1290, 108 L.Ed.2d 464 (1990). Therefore, the search in this case can be justified only by arrest for offenses for which Spector had probable cause to arrest White prior to the search. At that time, under the facts given in Spector's testimony, Spector had probable cause to arrest White for driving without a license and giving false information to the police.

■ There was no need to prevent the destruction of evidence for those offenses, since proof would not depend on any physical evidence to be found in the car. Police would have had ample opportunity to establish White's actual identity once he was in custody, without need of an immediate search of his car. The state concedes that the search cannot be justified as a search for weapons. When White was arrested he was seated in the back of Spector's police car. White's car was not in his immediate surrounding area.

Spector never did arrest White for driving without a license or giving false information to the police; he was arrested only for possession of cocaine, and *after* the search of the car. Thus, under the principles affirmed in *Chimel* and *Belton,* the search could not be a valid search incident to arrest. To justify a warrantless search as incident to an arrest for possession of fruits of that search would render the warrant requirement a dead letter. The state has not suggested any other well-established exception to the warrant requirement which could justify Spector's conduct. We conclude that Spector violated the fourth amendment's prohibition against unreasonable searches and seizures when he entered White's car.

### IV

The state argues that the evidence seized in the search was admissible because it would have been discovered, inevitably, if police had followed proper procedures. In *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), the Supreme Court decided that, in certain circumstances, items discovered by unconstitutional means could be admitted into evidence:

> [I]f the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police, there is no rational basis to keep that evidence from the jury in order to ensure the fairness of the trial proceedings. In that situation, the State has gained no advantage at trial and the defendant has suffered no prejudice.

*Id.* at 447, 104 S.Ct. at 2511.

The trial court admitted the cocaine and cash without considering whether police would inevitably have obtained them without misconduct. The state did not present testimony on police procedures in similar cases or any other evidence to show that the car would have been impounded and searched following arrest for the available offenses of driving without a license and giving false information. The record does not show whether the car was parked properly or whether police might have allowed White's relatives to pick up the car following such an arrest. On the record before this court, we cannot say that the state has proved that the evidence would inevitably have been discovered without the police misconduct.

### DECISION

The trial court instruction permitting the jury to infer possession of narcotics from their presence in White's car did not violate White's due process rights. The search of White's car violated his fourth amendment rights. We remand for determination of whether, using standard procedures for the factual situation presented to Spector prior to the search, police would have discovered, inevitably, the cash and cocaine found in the unconstitutional search.

Reversed and remanded.

FORSBERG, Judge (dissenting).

I respectfully dissent. Not only was it reasonable for the officer to make a cursory search of the car for identification, it was also justified as a search incident to arrest. *See New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981) (when police have arrested the occupant of an automobile, they may contemporaneously search the passenger compartment of the car). The majority erroneously narrows this authority by means of language from *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 2039, 23 L.Ed.2d 685 (1969). However, *Belton* establishes a "bright-line" rule. *See* 3 W. LaFave, *Search and Seizure* § 7.1(c) at 12–21 (2nd ed. 1987). This court cannot re-draw that line by a retrospective analysis of the need for or the scope of the search incident to arrest. *See State v. Rodewald*, 376 N.W.2d 416, 419 (Minn.1985) (retrospective analysis of need was inappropriate where "bright-line" rule permitted the search incident to arrest).

The majority reasons that the car could not be searched because White was then seated in the back seat of the squad car. However, it was just such case-by-case analysis under the *Chimel* "immediate control" test that the Supreme Court rejected in *Belton*. As Professor LaFave states, citing Justice Brennan's dissent in *Belton*, "a search of the vehicle is allowed even after the defendant was removed from the vehicle, handcuffed, and placed in the squad car." 3 LaFave, *Search and Seizure* § 7.1(c) at 15 (2nd ed. 1987). To reject the search is particularly inappropriate in this case, because White subsequently bolted from the squad car and would have had access to any weapons or evidence remaining in his vehicle.

I acknowledge that White had not formally been placed under arrest when the search occurred. However, as the majority concedes, Officer Spector had probable cause to arrest White for driving without a license and giving false information to a police officer. This was not at that point an ordinary traffic stop, and White, who had been extensively questioned and placed in the back seat of the squad car, was functionally under arrest. *Cf. State v. Herem*, 384 N.W.2d 880, 884 (Minn.1986) (ordinary traffic stop is not the functional equivalent of arrest). The subjective intentions of Officer Spector are not relevant to whether an arrest occurred. *See id.* at 883–84; *cf. State v. Moffat*, 450 N.W.2d 116, 120 (Minn.1990) (men detained in squad car were told they were not under arrest). Moreover, even if an arrest for the non-cocaine offenses would only have occurred later, the search incident was still valid. *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980). The officer did not use the search to acquire probable cause for those offenses; therefore, *Smith v. Ohio*, 494 U.S. 541, 110 S.Ct. 1288, 108 L.Ed.2d 464 (1990) does not apply.

The majority focuses on the fact that White was after the search formally arrested only for the cocaine offense. However, it is irrelevant that the search produced a more pressing reason for arrest. *Cf. State v. Robinson*, 371 N.W.2d 624, 626 (Minn. App.1985) ("all persons" search could not be upheld as incident to arrest where no patrons were charged). The original grounds for arrest on the non-cocaine offenses remained, although it would have been a formality for the officer to cite them at the scene. This is not a case in which the fruits of the search are used to justify the search itself.

The majority finds in a search for identification no well-recognized exception to the warrant requirement. However, the permissibility of limited intrusions during a *Terry* stop is well-recognized. *See e.g. Wold v. State*, 430 N.W.2d 171, 174–75 (Minn.1988). A limited search for identification, as discussed in *State v. Flynn*, 92 Wis.2d at 444–48, 285 N.W.2d at 718–19, is a limited intrusion to be justified under the *Terry* standard of articulable suspicion, which requires no separate exception to the warrant requirement.

Finally, I believe the cocaine inevitably would have been discovered in the course of an inventory search of the car, and that it is unnecessary to remand on this issue.

The "inevitable discovery" doctrine necessarily involves reasoning from hypothetical facts. *See State v. Doughty*, 456 N.W.2d 445, 449 (Minn.App.1990), *pet. for rev. granted* (Minn. July 31, 1990). Because the officer had a legal duty to prevent White from driving the car without a license, and to properly secure the vehicle, this court can conclude, without further factfinding by the trial court, that the cocaine inevitably would have been discovered in the course of an inventory search.